KUBE, Respondent, v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

St. Louis Court of Appeals, December 15, 1903.

1. NEGLIGENCE: Involuntary Accident: Proximate Cause. If one, by some involuntary mischance, precipitates a casualty resulting in injury to himself, but was exposed to danger of the casualty by another's negligence, his right to recover damages for such injury will depend upon whether the prior negligence of the other party, or the mishap, was the proximate cause of the harmful accident.

2. STREET RAILWAYS: Ordinary Care: Degree of Care Dependent Upon Circumstances. The degree of care obligatory upon those operating street cars is ordinary, not extraordinary, but what is ordinary care depends upon circumstances of time, place, whether the street be crowded or not, whether the pedestrians be children or adults and the carmen's opportunity of forecasting danger and obviating it.

3. ———: ———: ———: Question of Fact. If a carman knows a street crossing will be thronged with school children at a certain hour of the day, and moves over the crossing at that hour without having his car under control, and if a child is injured by him while running at a high speed, a question of fact for the jury arises as to whether he was negligent.

Appeal from St. Louis City Circuit Court.—*Hon. J. R. Kinealy*, Judge.

AFFIRMED.

*George W. Easley* and *Boyle, Priest & Lehmann* for appellant.

(1) The demurrer of the defendant to the plaintiff's evidence should have been sustained. The plain-

tiff was running across the track a sufficient distance in advance of the car to have enabled him to cross in safety but for the misfortune of his having fallen. He "stumbled on the track" and could not get up before he was struck. There was no evidence whatever of any negligence on the part of the motorman in the handling of his car. Boland v. Railroad, 36 Mo. 492; Nellis on Street Surface Railroads, p. 374, sec. 28 and authorities collected in note 63; Kennedy v. Railroad, 43 Mo. App. 1. (2) The motorman had no reason to apprehend that the plaintiff would stumble and fall on the track. The injury was caused by the act of the plaintiff. Funk v. Electric Traction Co., of Philadelphia (Pa.), 34 Atl. 863; Railroad v. Spearen, 47 Pa. St. 300; Chilton v. Central Traction Co. (Pa.), 25 Atl. 606; Kline v. Electric Traction Co. (Pa.), 2 Am. Neg. 644; Stabenau v. Railroad, (N. Y.) 4 Am. Neg. 210; Fenton v. Railroad, 126 N. Y. 625; 26 N. E. 967; Rack v. Railroad (Ill.), 3 Am. Neg. 20. (3) The child was not caused to fall by any defect in the track or anything placed on the track by defendant, so as to bring the case within the rule of Anderson v. Railroad, 161 Mo. 411.

*Joseph A. Wright* for respondent.

(1) Defendant company, under the circumstances shown in evidence, was guilty of gross carelessness and negligence in running its car at a rapid rate of speed through the multitude of small children passing over its tracks at a regular public crossing. Schmidt v. Railroad, 163 Mo. 645; Schmidt v. Railroad, 149 Mo. 269; Humbird v. Railroad, 110 Mo. 76; Oster v. Schuylkill Traction Co., 195 Pa. St. 320; Wallace v. Railroad, 26 Oregon, 174, 25 L. R. A. 663; Railroad v. Carlson, 58 Kan. 62; Bergen County Traction Co. v. Heitman's Admr., 61 N. J. L. 682; Sample v. Railroad, 50 W. Va. 472. (2) Failure to sound the gong until within six or eight feet of the plaintiff, one of the number of small

children crossing the tracks after dismissal of school, and at a public crossing, constitutes carelessness and negligence for which the defendant is liable. Railroad v. Touhy, 196 Ill. 410; Traction Co. v. Chenowith, 61 N. J. L. 554; Traction Co. v. Scott, 58 N. J. L. 682, 33 L. R. A. 122; Murphy v. Railroad, 73 Conn. 249; Railroad v. Hill (Ky.), 56 S. W. 21; Driscoll v. Railroad, 97 Cal. 553. (3) The instruction on plaintiff's contributory negligence is in strict harmony with the adjudications in this State, and is fully as favorable to the defendant as the rulings in similar cases in other jurisdictions. Campbell v. Railroad, 75 S. W. 86; Anderson v. Railroad, 161 Mo. 411; Day v. Railroad, 81 Mo. App. 471; Anderson v. Railroad, 81 Mo. App. 116; Costello v. Railroad, 161 N. Y. 317; Zuvack v. Railroad, 160 N. Y. 362; Markey v. Traction Co., 65 N. J. L. 82.

## STATEMENT.

Plaintiff is a minor child and was not quite seven years old when he received the injury which is the basis of this action. He was a student at the Ashland school in St. Louis, which is situate on the east side of Newstead avenue at the corner of Sacramento. About eight hundred children of ages ranging from six to fifteen years, attended that school. It was the custom to have a policeman stationed at the locality at dismissal hours in order to protect the children from injury by street cars while crossing Newstead avenue, on which there are tracks. On the day the accident happened to plaintiff the police officer had been temporarily withdrawn from that station on account of an accident at the fair grounds. The boy, Nicholas Kube, was dismissed along with a crowd of his school-fellows, about half past three o'clock in the afternoon and the children hastened, as was their wont, in various directions; many of them, among whom was the plaintiff, crossing the street to the west side on the way to their homes. Plaintiff while crossing the

street, stumbled or fell on the track and was struck by a car. But two persons besides the car crew, who were not called to testify, were eyewitnesses of the accident and they were school children. One of them, Cecelia Spindler, told it as follows:

"Q. When was the accident? A. The 7th of January, and I was just coming down out of my room when I seen the little boy——

"Q. What time in the afternoon? A. About after 3 o'clock; just when school was letting out.

"Q. What room are you in? A. I am in six.

"Q. What floor is that on? A. Third floor.

"Q. Where did you first notice Kube, this little boy, when you came out of school? A. I was going straight home, and he was running——

"Q. Where? A. He was running across the tracks then he just stumbled on the tracks and hardly couldn't get up—the car was coming at such awful speed—he couldn't get up and the car run over him.

"Q. Was the car coming fast or slow? A. Fast.

"Q. Did the motorman ring the bell? A. He rang the bell when he was right near him.

"Q. How close to the boy—when he rang the bell? A. About six feet.

"Q. Did he ring the bell before that that you heard? A. No, sir; I didn't hear him ring the bell,—just when he was trying to get by I heard the bell.

"Q. What became of the boy? Where did the car hit him? A. First hit him in the leg—then he took a summersault—and when the car ran over him I seen him lying in the street there.    . . .

"Q. Where was he when you first saw him? A. He was right crossing the street.

"Q. Which side of Sacramento—north or south? A. I think it was north.

"Q. North side of the street? A. Yes, sir.

"Q. From the east over toward the west side? A. Yes, sir.

"Q.   Was he in the street when you first saw him?
A.   Yes, sir; he was in the street, and he was running,
then he stumbled.

"Q.   Was he running after anybody?   A.   I don't
know if he was running after anybody.

"Q.   Was anybody running after him?   A.   I
don't know whether anybody was running after him.

"Q.   As he ran across the street you saw the car
coming?   A.   Yes, sir.

"Q.   You say he fell down?   A.   He fell down.

"Q.   Where did he fall?   A.   On the car track.

"Q.   Right in the middle of the car track?   A.
Yes, sir.

"Q.   What part of the car hit him?   A.   The fen-
der hit him first.

"Q.   Where was he lying after the car struck him?
A. In the middle of the track.

"Q   So the car must have run over him?   Yes,
sir.

"Q.   Right square over him?   A.   Yes, sir.

"Q.   Sure about that?   A.   Yes, sir.

"Q.   How far away were you?   A.   I was about
half a block away; I was standing at the crossing when
it happened."

Willie Vought testified:

"Q.   Were you at school the day this little Kube
boy got hurt?   A.   Yes, sir.

"Q.   How long have you known this little Kube
boy?   A.   About a month.

"Q.   A month before the accident?   A.   Yes, sir.

"Q.   Did you see him on the day he was hurt com-
ing out of school?   A.   Yes, sir.

"Q.   Did you see the car that struck him?   A.   Yes,
sir.

"Q.   Tell the jury just what you saw there.   Where
was the boy when you came out of the school?   A.   He
was running across the street, and he stumbled and the

car came, and he rang the bell, but he couldn't get up in time, and the car hit him.

"Q. How far was the car away from the boy when the motorman rang the bell? A. About eight feet.

"Q. About eight feet away? A. Yes, sir.

"Q. Did you hear him ring the bell before that? A. No, sir.

"Q. Was the car running fast or slow? A. Fast.

"Q. Where did the car hit this little fellow? A. Hit him on the leg first.

"Q. Where did it hit him next? A. He went under the car and I didn't see him after that. . . .

"Q. Which crossing was he on—north or south crossing? A. He was on the south crossing.

"Q. On the south crossing? A. Yes, sir.

"Q. And he was running from the east over to the west side of the street? A. Yes, sir.

"Q. Did he fall before the car struck him, or afterwards? A. He fell before the car struck him.

"Q. Fell on the tracks? A. Yes, sir."

For the plaintiff the court instructed that the law required persons situate as Nicholas Kube was when and before the accident happened, to exercise ordinary caution to avoid injury to themselves, and that the absence of such caution constituted negligence; but that in determining whether plaintiff was exercising such caution, the jury should take into consideration his age and capacity; that if in going on defendant's track plaintiff was using the degree of care which, according to the ordinary experience of mankind is to be expected of one of his capacity, he was not guilty of negligence. Further, that the law required the defendant company's servants to be watchful to see that the way was clear in the direction in which the car was going, and that where they had reason to anticipate the sudden and unexpected appearance of children on or approaching the track, they should so manage the brakes and controller of the car

as to be able to stop quickly and readily if necessary; that if, under all the circumstances detailed in the evidence, the jury found there was reason to anticipate the sudden and unexpected appearance of children on the track at the intersection of Newstead and Sacramento avenues, and that the defendant's servants in charge of the car were not so managing its controller and brakes as to be able to stop quickly should occasion require, and further found the injuries sustained by plaintiff were caused by the failure of defendant's servants to so manage said controller and brakes, their verdict should be for the plaintiff, unless they found the plaintiff himself was not using the degree of care to be expected of a boy of his age and capacity in the circumstances shown.

For the defendant the court instructed substantially as follows: That the burden was on the plaintiff to establish by the greater weight of evidence that the agents or servants in change of the car were guilty of some act of negligence or want of ordinary care which was the direct, proximate and efficient cause of the injury, and unless plaintiff had so proven he was not entitled to recover. That the mere fact of the accident was no evidence of negligence in itself; but to find for the plaintiff the jury must find that at the time of his injury, defendant's servants were guilty of some want of ordinary care; that is to say, of doing some act which would not have been done by an ordinarily careful person in similar circumstances, or omitting some act that would not have been omitted by such person in the circumstances. That in order for the plaintiff to recover on account of the speed of the defendant's car, the jury must find it was being run at a speed which was negligent under the circumstances; or, in other words, at such speed as a reasonably careful and prudent motorman would not have tolerated; and unless they so found, plaintiff could not recover on the ground of excessive speed. That in order to find for the plaintiff on the theory that the defend-

ant's motorman, by the exercise of ordinary care, would have seen the plaintiff in time to stop his car and avoid a collision, the jury must find plaintiff was in a position of peril on or near defendant's track when the car was a sufficient distance away for the motorman, by the exercise of ordinary care, to have stopped or checked the car before it reached plaintiff. That the defendant was not required to sound the car gong at all times, and in order to find for the plaintiff on account of failure, if failure there was, to sound the gong, the jury must find that an ordinarily careful motorman, situate as defendant's motorman was, would have sounded the gong on approaching Sacramento avenue; that if they did so find, they could not return a verdict for the plaintiff for failure to sound the gong, unless they further found that such failure was the direct and proximate cause of plaintiff's injury. That if the jury found from the evidence that plaintiff ran in front of defendant's car without warning, and under such circumstances as to make it impossible to stop the car and avoid a collision after the motorman saw, or by the exercise of ordinary care, might have seen plaintiff was about to place himself in contact with the car, the verdict must be for the defendant. That the absence of a policeman from the place could not make the defendant liable. That if the jury found the plaintiff failed to exercise the caution in caring for himself usually exercised by persons of his age, the experience and intelligence, in respect to placing himself in danger, at a time when it was impossible for the motorman to avoid injuring him by the exercise of ordinary care, plaintiff was not entitled to recover.

A peremptory instruction requested by the defendant, was refused, as were others to the effect that there was no evidence to show the plaintiff was in a position of peril for a sufficient length of time for the motorman to have averted the collision by the exercise of ordinary care, that there was no evidence the car was run at a negligent or careless rate of speed, no evidence that de-

fendant failed to sound the gong; and that the jury could not find for the plaintiff on those grounds.

A verdict for one thousand dollars was returned in favor of the plaintiff, judgment was entered accordingly and defendant appealed.

GOODE, J. (after stating the facts as above).— The point pressed on our attention is that on the whole evidence a nonsuit should have been ordered. The argument made in support of this proposition is based on the assumption that plaintiff was crossing the track far enough ahead of the car to have passed over safely if he had not fallen; hence, the fall or stumble was the proximate cause of the accident; not negligence on the part of the motorman in running at too high speed or failing to stop the car as quickly as possible after he discovered the danger of running over the boy. Several cases are cited in support of this point. Barkley v. Railroad, 96 Mo. 367; Boland v. Railroad, 36 Mo. 484; Kennedy v. Railroad, 43 Mo. App. 1; Kline v. Railroad, 2 Am. Neg. Rep. 644; Stabenau v. Railroad, 4 Am. Neg. Rep. 206; Fenton v. Railroad, 126 N. Y. 625.

We do not consider it so absolutely certain that plaintiff would have crossed the track safely if he had not stumbled as to preclude the possibility of a reasonable inference to the contrary. The testimony of the eyewitnesses is consistent with the theory that the boy was struck on the leg after he stumbled, but before he fell to the ground. One witness said the car first hit him on the leg, then he took a summersault and when the car ran over him, he was lying in the street. The other witness gave about the same version, saying the car hit him on the leg first and he went under the car. True, this witness swore he fell on the track before the car struck him; but the entire evidence allows the inference that plaintiff stumbled and before he could recover himself was hit and fell to the ground. He could hardly

have been thrown a summersault, if he was prostrate when first struck.

What is controverted is the sufficiency of the evidence as a whole to raise an issue of fact for the jury's decision as to whether the plaintiff, despite his stumble or fall, could have been saved from harm if the car had been moving at what was a reasonable speed considering the likelihood of children being in the street.

If an individual by some involuntary mischance, precipitates a casualty resulting in injury to himself, but was exposed to danger of the casualty by another's negligence, the law does not always construe his own mischance, instead of the prior negligence of the other party, to be the proximate cause of the injury, and shut him off from damages. Whether the injured party will be denied relief depends on whether he himself was guilty of negligence that proximately caused the harmful accident. There are numerous negligences that only result in mishaps because of some incident like the fall of this boy; but in which the negligence itself and not the mishap which made it potent to do harm, was the proximate cause of the harm.

In Lore v. Mfg. Co., 160 Mo. 608, the plaintiff, a girl of sixteen, slipped on a greasy floor of a factory and as she fell thrust her arm into some insufficiently guarded cogwheels and gearing machinery, whereby it was crushed. The negligence of the defendant consisted in working the machinery without having the guards in good repair, as the statute required it to have. The contention was advanced that the girl assumed the risk of slipping on the floor and could not recover; for although the machinery was unguarded, she would not have been hurt but for her fall. In dealing with this contention the Supreme Court said the slipping was not the sole cause of the injury; which would not and could not have happened but for another cause—the insufficient guard around the gearing; and that as plaintiff was in the exercise of ordinary care at the time she

accidentally slipped and would not have been hurt except for the unguarded machinery, she had a good case.

A similar instance was Musick v. Dold Packing Co., 58 Mo. App. 322. The plaintiff therein slipped on a piece of ice, or a slippery floor, and was thereby caused to fall into a vat of hot water negligently left uncovered. The defendant complained of error because the court had refused an instruction that if the plaintiff was injured by slipping there could be no recovery; as to which the court said:

"Besides this, the negligence charged in the petition was that the defendant had maintained said vat in an unfinished and incomplete condition, etc. The facts embraced within the assumption of the instruction, if true, would not excuse the defendant from its liability to plaintiff for the injuries alleged to have resulted to plaintiff in consequence of the defendant's breach of duty. It is true that if the plaintiff had not slipped his limb would not have been plunged into the hot water tank. It is equally true, that though he slipped, the disaster would not have overtaken him had not the tank been uncovered. The slipping was not the sole cause of the injury. The latter would not have occurred except for the presence and co-existence of both causes. The cause of the plaintiff's slipping was altogether accidental. If it was the sole cause of the injury the defendant is not liable. But the injury would not have resulted had not another cause combined with the accidental cause. If the plaintiff was in the exercise of ordinary care and prudence at the time he slipped, and the injury is attributable to the absence of the cover over the tank, together with the slipping, then the plaintiff should recover. If the direct and proximate cause of the injury was the uncovered and unprotected condition of the tank, then plaintiff would be entitled to recover though the slipping of the plaintiff contributed to the injury."

The cases dealing with accidents to children on car tracks which we have cited from the defendant's brief,

are unlike this one; since the several casualties which gave rise to them occurred at points on streets where the carmen had no reason to anticipate the presence of a crowd of children, and, therefore, no reason to run their cars at less than the speed permissible elsewhere. In some of them the injured child had fallen on the track before the car reached it; but whether that happened or not, the decision exonerating the railway company was based, in every instance, on testimony proving the child darted suddenly on the track when a car was approaching at a considerable speed, and so near that it could not be stopped before reaching the victim.

The vigilance and activity obligatory on the defendant's servants to avoid hurting the plaintiff were the same in degree as rest on it generally to avoid harm to persons in city streets, that is, ordinary vigilance and activity; not extraordinary. Although less care for their own safety is exacted of young children than of individuals of full capacity, the general rule for measuring the care to be observed by others in such instances is not raised in favor of children. Stanley v. Railroad, 114 Mo. 606.

But while only ordinary care must be taken by the servants of railway companies to avoid hurting pedestrians in streets, whether the pedestrians be children or adults, greater precautions are necessary in order to fulfill the rule in some instances than in others. The obligation imposed by the law is to take the care that men of common prudence take when confronted by similar situations and conditions; not what men of extreme prudence might take. Frick v. Railroad Company, 75 Mo. 595. What precautions a man of ordinary prudence will take to prevent a catastrophe, depends on his knowledge of facts which suggest the probability of a catastrophe ensuing unless means are adopted to avert it; and suggest, therefore, as well, the adoption of such means. Bowen v. Railroad, 95 Mo. 268; Quirk v. Rail-

road, 126 Mo. 279; King v. Oil Co., 81 Mo. App. 155; Conrad Grocer Co. v. Railroad, 89 Mo. App. 391.

In Frick v. Railway, supra, it was held that although a railway company is bound to use ordinary care, both in the country and in towns, to avoid hurting travellers or running over them, greater pains are needed to comply with that legal requirement in town than in the country, because the risk of such accidents is greater on city streets than on country roads.

In Stanley v. Railway, supra, which was an action for the death of a minor child, the above principles were declared, the Supreme Court saying of the rule requiring ordinary care:

"It is one that enables each jury in each recurring case, to say after a careful survey of all the facts, whether a party has used that care that an ordinarily prudent person would have used under similar circumstances. It is one that is susceptible of practical application. It furnishes the measure required by the law and leaves to the triers of the fact the determination of the facts and fixing the liability under that rule. It is sufficiently elastic to meet the most aggravated case, or one containing the slightest negligence."

The idea of notice, warning or data of knowledge, which will enable one using good judgment to anticipate a possible catastrophe, deeply pervades the rules fixing the responsibility for negligent torts. Indeed, one of the cardinal and general rules of the law of negligence is that the quantum of care to be observed, and liability for its non-observance, are in proportion to the opportunity of forecasting danger and knowing the need of obviating it. In commenting on a case founded on an injury to a servant caused by the defective handhold of a freight car, in which the evidence showed the defect was invisible to one looking at the handhold, but that it bore signs of age and rust that might have warned the inspector of the importance of thorough scrutiny, the Supreme Court said:

"We can not formulate any rule of law fixing definitely the standard of ordinary care. Every attempt to do it has resulted in failure. What is ordinary care in one case, might be the grossest negligence in another. A mere glance at one handhold might indicate to an ordinary observer that it was safe; while, on the other hand, a glance might discover its defectiveness; and again, the conditions might be such that ordinary prudence would suggest and require a careful scrutiny." Guthridge v. Railway, 105 Mo. 520.

It is clear that though the varied facts of different situations may not alter the legal standard of care required to avoid an accident, they often multiply the precautions that must be observed to comply with the standard; that is, to satisfy the law. It is clear, too, that warning or foreknowledge plays an important part in fixing the responsibility of a person accused of negligently doing mischief.

But the warning which fastens liability if mischief is not prevented, because it affords an opportunity to prevent the mischief, may be received in different ways: If the casualty was due to the collision of an electric car with an individual, the motorman may have been warned by discerning the person walking on the track ahead of the car, or about to drive on it oblivious of danger, or lying asleep on it. In either of those emergencies, or others which may arise, the motorman must stop his car before reaching the exposed party, if he has time to do so after discovering the perilous position; as has been decided with wearisome repetition. That is equivalent to deciding that liability falls on street railway companies if a motorman operating one of its cars neglects to get the car under control as soon as he can after he knows, or ought to know he must do so to save life or limb. Aldrich v. Transit Co., 101 Mo. App. 77, 74 S. W. 141.

Now if a carman knows a street crossing will be thronged with school children at a certain hour of the

day, that fact ought to warn him of the danger of a fatality if he moves over the crossing at that hour without having his car under control; and if a child is injured by his running over the crossing at a high speed at the given hour, a question of fact arises as to whether he was negligent. The situation suggests the danger, if we may adopt the language used in Lore v. Mfg. Co., supra. This seems to be the doctrine announced by the Supreme Court in Schmidt v. Railway, 163 Mo. 645, 149 Mo. 269, which authority controls the present controversy. Its reasoning was carefully followed by the circuit judge in instructing the jury on the trial below; and, in fact, the main instruction given for the plaintiff is a copy of one approved in the Schmidt case. In that action it appeared a child of the plaintiff had been killed by a street car on a certain crossing in St. Louis while the car was running fast, at an hour when the crossing was usually filled with school children. The Supreme Court said:

"If the gripman had been on the lookout, as this instruction said it was his duty to have been, he would have seen those children on the sidewalk; and if, as he said, the buggy obscured his view, he ought reasonably to have apprehended that some were likely or liable to emerge from behind that obstruction when the crossing of Lemp avenue was reached, and if he had been on the watch for them, and holding his train in control, the probabilities are the child would not have been killed."

The operator of the car which struck the plaintiff was accustomed to that run, knew a swarm of children poured into Newstead avenue and over the crossing at the hour he was passing and could see for a long distance that there was no policeman on guard as usual. The testimony of two eyewitnesses bore sufficiently on the speed of the car to warrant the inference that it was excessive, the facts considered; since both of them swore it was running fast and one that it was running "awful

fast." This evidence made an issue for the jury and precluded the nonsuit of the plaintiff.

In dealing with a similar litigation, the Supreme Court of Kansas said:

"It would be difficult to conceive a more reckless act than that of driving street cars at a rate of twelve miles an hour into a swarm of school children just as they were leaving school."

The speed of the car in this case may not have been that high; but there was testimony for the jury as to whether or not it was higher than it ought to have been when the carmen knew little children would be in the streets and some of them heedless of danger.

The case was well tried; the instructions given for the defendant were liberal and there was evidence for the jury as to whether the negligence of its servants was the proximate cause of the accident.

Judgment affirmed. *Bland, P. J.*, and *Reyburn, J.*, concur.