[L. A. No. 1555. In Bank.—March 21, 1907.]

## CHARLES HENDERSON, Appellant, v. LOS ANGELES TRACTION COMPANY (a Corporation), Respondent.

NEGLIGENCE—STREET RAILWAY—ORDINARY CARE REQUIRED.—The operator of a street railway is only required to use ordinary care and caution in the management and operation of its cars to avoid inflicting injury upon a person traveling upon or using the street upon

CL Cal.—44

which the cars are being operated. Ordinary care is that degree of care which a person of ordinary prudence would use under the same or similar circumstances. The standard by which such degree of care is to be measured is not absolute, but varies with the circumstances attending the operation of the cars, such as the character of the cars, the agency of propulsion, the locality in which they are operated, whether in the country or in a city, whether over much-traveled or unfrequented streets, and the possibility or probability attending their operation.

ID.—INSTRUCTIONS—APPLICATION TO EVIDENCE.—Where the court correctly instructs the jury as to the duty of a street-railway company to use ordinary care in the operation of its cars it cannot be assumed on appeal that the jury were unable to apply the instruction to the facts and circumstances of the case. It is to be assumed that the jury understood the instruction and applied it to the evidence, and if the appellant thought the instruction was too general, he should have presented more definite and specific instructions.

ID.—CONTRIBUTORY NEGLIGENCE—COLLISION WITH WAGON.—In an action against a street-railway company to recover damages for personal injuries resulting from a collision between a wagon in which the plaintiff was sitting and an electric car operated by the defendant, it is proper to instruct the jury that "in determining whether or not the plaintiff was negligent you should consider whether or not under all the circumstances of the case it was his duty, using ordinary care for his own safety, to have jumped from the wagon." Such instruction leaves the question of the plaintiff's negligence to be determined from all the circumstances in the case, and, if given, renders without prejudice the refusal to give an instruction requested by the plaintiff which referred more particularly to the circumstances to be considered by the plaintiff in determining whether he should have left the wagon or not, where the circumstances were such as jurors would naturally take into consideration whether their attention was called to them or not.

ID.—CONSTRUCTION OF INSTRUCTIONS.—In determining whether a jury has been properly instructed, the instructions, taken as a whole, must be considered, and if, when the entire charge is examined, the omissions or inaccuracies in a particular instruction appear to have been supplied, and the jury fairly and consistently instructed generally as to the law, this is sufficient to defeat any claim of error predicated on defects in particular instructions.

ID.—LAST CLEAR CHANCE.—In such an action, the plaintiff tendered an instruction which in effect informed the jury as to the care to be exercised by the defendant in the ordinary operation of its cars, and that it would be liable to plaintiff for injury resulting to him by reason of its negligence, "*and not by reason of his own negligence.*" The court gave the instruction as tendered, substituting for the italicized words the following: "unless you find that the plaintiff was negligent and that such negligence contributed to such

injury.''   *Held,* that the instruction was not intended as a state-
ment of the doctrine of the ''last clear chance,'' and that the
omission of the word ''proximately'' before the word ''contributed''
in the substituted clause did not render it erroneous, where other
instructions clearly stated the rule as to the duty of the employees
of the defendant to avail themselves of the last clear opportunity
to avoid injuring the plaintiff after discovering his peril, even
though such peril was occasioned by his own contributory negligence.

APPEAL from an order of the Superior Court of Los
Angeles County refusing a new trial.   Curtis D. Wilbur,
Judge.

The facts are stated in the opinion of the court.

D. M. Hammack, and Hunsaker & Britt, for Appellant.

E. E. Milliken, and E. W. Camp, for Respondent.

LORIGAN, J.—This action was brought to recover damages
for personal injuries sustained by plaintiff through a collision
between an electric car of defendant and a wagon in which
plaintiff was seated.   The jury returned a verdict for defend-
ant, and plaintiff appeals from an order denying his motion
for a new trial.

Plaintiff, a plumber's helper, twenty-three years of age,
who was accustomed to and understood the driving and han-
dling of horses, on the morning of July 2, 1901, accompanied
his employer in an ordinary one-horse uncovered plumber's
wagon to a residence on the west side of Georgia Street, in
the city of Los Angeles, which his employer entered to examine
its plumbing, leaving plaintiff in charge of the horse and
wagon.   Georgia Street is a street forty feet wide between the
curbs, running in a northerly and southerly direction, and
defendant on the day of the collision operated a double-track
electric railway over it, the distance between the curb and
the west side of defendant's track being thirteen feet.   The
residence at which they called was on Georgia Street, between
Fifteenth and Sixteenth streets, and soon after his employer
had gotten out of the wagon and entered the house plaintiff,
on account of a fear entertained by him that the horse would
become frightened by the cars of defendant moving along
Georgia Street, drove off of that street on to Fifteenth Street,

remained there some time, and then drove back and again took up his position in front of the residence where his employer was engaged. When plaintiff returned he drove up close to the west curb of the street, the rear end of the wagon being nearer to the track of defendant than its front; the horse faced north, and the plaintiff sat in the wagon holding the lines. This was the situation when a car of defendant approached traveling from the north along Orchard Street towards the point where plaintiff was stationed and where the collision occurred.

As to such collision. According to the testimony of plaintiff he first discovered the approach of the car which occasioned it when distant a little more than three hundred feet from him; that it was then moving towards him on the west track at a high rate of speed; that when it approached to within something over two hundred feet from where he was the horse he was holding became restless and commenced backing; that despite plaintiff's efforts to prevent it the horse backed the rear right wheel of the wagon on the west track of defendant's road, where it was struck by the car, causing plaintiff to be thrown out of the wagon to the ground and injured; that the horse and wagon were plainly visible to the motorman of defendant from the time the car turned into Georgia Street from Thirteenth Street (several blocks away), and that the motorman made no effort to check the high rate of speed of the car until it was almost on top of the wagon. The evidence on the part of the defendant tended to show that the motorman did not discover the horse and wagon until the car was something over one hundred feet from it, and that the horse did not begin to back until the car had approached within twenty feet of him. There was some other evidence that the horse showed signs of being frightened when the car was within forty or fifty feet of him, but did not commence backing until it got nearer. There was also evidence that the car during its entire movement along Georgia Street was going at a speed of seven or eight miles an hour, and that as soon as the motorman saw the horse begin to back he applied the brakes and reversed the current, and used all available means to stop the car.

This is a sufficient statement of the evidence in the case for the purpose of considering the grounds urged by appellant

for a reversal, which are confined solely to alleged errors on the part of the trial court as to instructions.

1. It is insisted that the court erred in instructing the jury: ''That it is the duty of the operator of a street railway to exercise *ordinary care* and caution in the management and operation of its car to avoid inflicting injury upon a person traveling upon or using the street upon which the car is being operated, . . .'' and in refusing to give the instruction requested by plaintiff, ''that the conductor and motorman in charge of the car of the defendant which collided with the wagon on which the plaintiff was seated were required to use *great care* to see that no injury was caused to persons or teams having business in the streets.''

We perceive no error committed by the court in its action as to these instructions. It is not the law that in the operation of a street railroad the operator is required to use *great care* to avoid injury to persons traveling on or using the streets over which the cars are operated. The operator of a street railroad over a street, and the traveler on or person using said street, are reciprocally bound to exercise that degree of care which a person of ordinary prudence would use under the same or similar circumstances, which is ordinary care only.

This is the general rule laid down by text-writers on the subject, and we confine ourselves in the citation of authorities to the rule as applied in the operation of street railways alone. (Nellis on Street Railway etc. Law, sec. 25, p. 303; Joyce on Electric Law, sec. 575.) It is likewise the rule in jurisdictions other than our own as to the same subject. (*Pendleton Street R. R. Co.* v. *Shiras,* 18 Ohio St. 255; *Gorman's Admr.* v. *Louisville Ry. Co.,* 24 Ky. Law Rep. 1938, [72 S. W. 761]; *Stafford* v. *Chippewa E. R. Co.,* 110 Wis. 331, [85 N. W. 1036]; *Kube* v. *St. Louis Transit Co.,* 103 Mo. App. 582, [78 S. W. 55]; *Perras* v. *United Traction Co.,* 84 N. Y. Supp. 992, [88 App. Div. 260]; *West Chicago R. R. Co.* v. *Wizeman,* 83 Ill. App. 403.)

It is also the rule expressly laid down in this state. (Civ. Code, sec. 1714; *Cunningham* v. *Los Angeles Ry. Co.,* 115 Cal. 561, [47 Pac. 452]; *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [98 Am. St. Rep. 85, 74 Pac. 15].)

It is insisted by appellant that the instruction tendered by him and refused, is supported by *Mock* v. *Los Angeles Traction Co.*, 139 Cal. 616, [73 Pac. 455]. It is true that in that case an instruction was approved which stated that ordinary care to be exercised by an electric street-car line required "great care in keeping its appliances for stopping cars in good condition." The court said: "As these cars cannot be operated upon the public street with safety unless this is done, "ordinary prudence requires that 'great care' should be exercised in that direction." It was, however, stated by the commissioner who wrote the opinion in that case, that it was not essential to a disposition of the appeal before it that this instruction should be considered, and it was not, because the order granting a new trial was affirmed on other grounds, exclusive of any consideration of the correctness of the instruction at all. Under these circumstances the language used by the court cannot be held to be an authoritative declaration of a rule of law as to the care to be exercised in the general operation of electric-car lines, either as to the selection of appliances, or the active operation of the cars over the tracks. The rule as declared by the general authorities on the subject, and by the decisions of this court in cases involving the question as to the degree of care required, and to which we have referred, is that only ordinary care must be exercised,—that degree of care which an ordinarily prudent person exercises in the operation of electric street-car lines; and if the language used in *Mock* v. *Los Angeles Traction Co.*, 139 Cal. 616, [73 Pac. 455], is to be considered as laying down a different rule, the decision is to that extent erroneous and is overruled.

And as we read the other authorities cited by appellant in support of the instruction asked by it and refused, we do not understand them as laying down any different rule than that ordinary care must be exercised. They discuss and elaborate the proposition that the degree of vigilance and prudence to be exercised by one operating cars upon a street railroad depends upon the nature and character of the agencies or instrumentalities employed in their propulsion, taking into consideration the time, place, and circumstances attending their operation. They lay down the rule, the justness and soundness of which none will question, that a higher degree of vigilance and caution in order to prevent accidents to trav-

elers is exacted from those operating cars propelled by electricity than from those operating cars propelled by a less powerful agency and one more subservient to the will of the person in charge of the cars. This is in harmony with the familiar rule that the greater the danger to be apprehended the greater the vigilance to be exercised in guarding against it. But because the degree of vigilance to be exercised in the operation of the cars must be greater in the one case than in the other, it does not affect the standard under which the liability of the person operating the car is to be measured in the event of an accident.

The standard remains the same. While a less degree of watchfulness and vigilance may be required of one operating cars moved by horse-power than is required of one in control of cable cars and a still greater degree of caution and vigilance required from those in control of electric cars, still, when the question of negligence in the operation of cars by any of these different modes or agencies arises, the same standard of accountability is applied,—namely, Was ordinary care being exercised by the person in control of the car at the time when his conduct relative to its operation is under consideration? No matter by what agency the car he is operating is propelled, whether by the now practically obsolete system of horse-power, or by cable, or by electricity, he is not required, in its operation, to use the highest degree of care, nor is the duty cast on him to use great care, but he is only required to use ordinary care, and responsible only for his failure to do so.

The standard by which ordinary care is to be measured is not absolute; and in the case of the operation of street-cars it must vary with circumstances attending their operation— the character of cars, the agency of propulsion, the locality in which they are operated, whether in the county or in a city, whether over much-traveled or unfrequented streets, and the possibility or probability of danger attending their operation. Taking these circumstances into consideration, it is quite apparent that the same degree of precaution, and the same pains to avoid accidents, are not required in the movement of a horse-car as in that of an electric car. We take these systems simply as extremes for the purpose of illustration. The movement of a horse-car being comparatively slow and the car being readily in the control of the

driver, the same degree of vigilance and caution in its operation would not be required as in the case of an electric car, an instrument of greater weight and momentum, propelled with greater speed and more difficult to control. Danger is more probable in the operation of the one than in the other, and greater precautions are required to prevent injury. But these differences in the circumstances attending the operation of the cars on the different systems do not change the standard of accountability attending the operation of either. The standard to be applied when the question arises as to how either was being operated at a given time is, Was it being operated with ordinary care? The precautions which were required to be taken to comply with the standard may be greater in the one instance than in the other, but in either instance the standard is the same. In the case of the driver of the street-car the question is, considering the power by which his car was being moved and the circumstances attending his operation of it, Did he exercise that care which an ordinarily prudent man would, with the same instrumentalities and under the same or similar circumstances, have exercised? In the case of the motorman the same standard is applied,— namely, Considering the instrumentality under his control, its momentum and speed capacity, did he exercise that degree of care with it which a person of ordinary prudence would have exercised with the same instrumentality under the same or similar circumstances? In either case the question is, Was ordinary care used? This is the standard which, while the circumstances under which it is to be determined may be different, is the proper standard to be applied. Hence, when in the case at bar the court instructed the jury that in the operation of the electric car the motorman was only required to use ordinay care and caution, it stated the proper legal rule under which the liability of the defendant was to be measured.

It is insisted, however, that the definition of ordinary care as given by the court was too general, and did not tend to assist the jury in applying the particular circumstances in the case in determining whether such care had been exercised or not.

We cannot assume, however, that when the court correctly instructed as to a rule of law that the jury were unable to

apply it to the facts and circumstances surrounding the operation of the electric car and which were shown for the sole purpose of having them determine therefrom whether ordinary care was used or not. It is to be assumed that the jury understood the instruction and applied it to the evidence. If appellant thought the instruction was too general, he should have presented other instructions which in his opinion would have made it more definite and specific. Besides this, when we take into consideration all the instructions given by the court, it appears therefrom that the court did instruct the jury as to what should be considered in determining what was "ordinary care" required to be exercised by defendant. It instructed them that a person operating a street-car is bound to anticipate the presence of vehicles and pedestrians on the highway; that he should be watchful to see that the way is clear in which he is going, and regulate his speed accordingly; that a speed at the rate of eight miles an hour would be negligence unless it was a safe rate under all the circumstances; that the motorman was bound to run his car consistent with proper care for the safety of persons using the street and for the safety of plaintiff. And taking the instructions as a whole it satisfactorily appears therefrom that the jury were instructed that whether the defendant exercised ordinary care or not was to be determined by all the facts and circumstances disclosed by the evidence in the case.

2. As to the next instruction complained of. The court instructed the jury that "in determining whether or not the plaintiff was negligent you should consider whether or not under all the circumstances of the case, it was his duty, using ordinary care for his own safety, to have jumped from the wagon."

This was doubtless given in place of an instruction tendered by plaintiff. Appellant complains because the instruction which was tendered by him on the subject was refused. While, without critically examining it, it would appear that the court might have properly given the instruction as asked, still we do not see that any injury was sustained by plaintiff in modifying it, or in substituting for it the instruction given. The instruction as given left it to the jury to determine from all the circumstances in the case, whether it was the duty of plaintiff to have left the wagon to avoid injury. The

instruction tendered referred more particularly to circumstances to be considered by the plaintiff in determining whether he should have left the wagon or not. But as in any event, under either instruction, the question of negligence in this particular was left to the jury to be considered under all the facts and circumstances in the case, which under the record do not seem to be particularly complicated, and, as in the nature of things this resolved itself into a simple question of the exercise of ordinary judgment in a situation of apparent danger, we hardly think that prejudicial error can be predicated upon the refusal to give the instruction literally as asked, or in giving the substituted instruction. The instruction as given was proper, and the circumstances particularly referred to in the instruction tendered, which it is claimed the jury should take into consideration in determining whether it was negligence or not for the plaintiff to have remained in the wagon, were such as jurors would naturally take into consideration whether their attention was called to them or not.

3. Appellant tendered an instruction as follows: "You are instructed that a person in charge of a street-car upon a public highway is bound to anticipate the presence of other vehicles and pedestrians on such highway. The law requires that a person who is managing a street-car should be watchful to see that the way is clear in the direction in which he is going, and accordingly regulate the speed at which he is running the car; and if you find from the evidence in this case that the street-car of the defendant was being run at a rate of speed at which it could not readily and quickly be stopped should occasion require, and that such rate of speed was careless and dangerous, considering the character and location of the street and all of the surrounding circumstances, and you further find the plaintiff was injured by reason of such negligence, *and not by reason of his own negligence,* then your verdict should be for the plaintiff."

This instruction the court modified. The modification consisted of substituting for the words italicized in the instruction tendered the following: *"Unless you find that the plaintiff was negligent and that such negligence contributed to such injury,"* and as so modified was given to the jury. Appellant complains of the modification, his ground of complaint being

that in giving the instruction as modified the court ignored the principal point in the instruction as tendered, which was, that in order to relieve defendant from responsibility from its negligence, the contributory negligence of plaintiff must have been the *proximate* cause of his injury; that the word "proximately" should have been inserted before the word "contributed" in the substituted clause, in order to clearly define the negligence of plaintiff which would relieve the defendant; or to state the contention of appellant more clearly, it is insisted, that by the substitution the court eliminated from consideration by the jury the doctrine of the "last clear chance," which, formulated, is that even assuming the negligence of plaintiff contributed to the injury of which he complains, still if, after the occurrence of such contributory negligence, the employees of defendant saw the dangerous condition in which plaintiff was placed, and by the exercise of ordinary care could have stopped the car and so have avoided injuring him, and failed to do so, the defendant is responsible.

It will be perceived, as far as the insertion of the words "proximate" or "proximately" is concerned, that neither of these words is used in the instruction as tendered by appellant and he can hardly be heard to complain that the court was not more accurate in framing the modification than plaintiff was in framing the tendered instruction. In other parts of the charge the jury were clearly instructed that in order to avail itself of the defense of contributory negligence on the part of plaintiff, it was necessary for defendant to show that such negligence contributed *proximately* to his injury. In determining whether a jury have been properly instructed as to the law, the instructions taken as a whole must be considered. Where numerous instructions are given (as in this case) it may well be that some particular instruction fails to contain a complete or accurate statement of the law. If, however, when the entire charge is examined the omissions or inaccuracies in a particular instruction appear to have been supplied, and the jury fairly and consistently instructed, generally, as to the law, this is sufficient to defeat any claim of error predicated on defects in particular instructions. (*Stevenson* v. *Southern Pacific Co.*, 102 Cal. 143, [34 Pac. 618, 36 Pac. 407]; *Dolan* v. *Sierra Ry. Co.*, 135 Cal. 435, [67 Pac.

686]; *Anderson* v. *Seropian,* 147 Cal. 201, [81 Pac. 521].)
Aside from this, however, it is quite apparent from a mere
reading of the instruction tendered that it was not formulated
upon the theory that there was thereby being submitted to
the jury the doctrine of the "last clear chance." That doc-
trine is capable of very simple and clear expression in an
instruction. There is, however, not one word in the tendered
instruction which even remotely or suggestively pretends to
declare it; nothing declaring (as the instruction would if it
was so contemplated) that notwithstanding the jury might
find the plaintiff was guilty of contributory negligence, yet,
if they found that the motorman perceived the dangerous sit-
uation in which plaintiff was placed in sufficient time by the
exercise of ordinary care to have stopped the car and so have
avoided injury to the plaintiff, and failed to do so, the defend-
ant was liable. The instruction, it is clear to us, as it must
have been to the trial court, was intended to inform the jury
as to the care to be exercised by the defendant in the ordinary
operation of its car, and its liability to plaintiff for injury
resulting to him in such operation, through want of ordinary
care on the part of defendant, without fault of plaintiff. That
this was the purpose of the instruction is further confirmed
by the fact that an instruction was tendered by plaintiff, and
given by the court, clearly and specifically stating to the jury
the rule as to the duty of the employees of the defendant to
avail themselves of the last clear opportunity to avoid injuring
plaintiff after discovering his peril, even though such peril was
occasioned by his own contributory negligence.

There are no other points made by appellant as to the
instructions which we think merit any discussion.

The order appealed from is affirmed.

Shaw, J., Henshaw, J., Sloss, J., Angellotti, J., and McFar-
land, J., concurred.