[Civ. No. 11438. Second Appellate District, Division One.—June 17, 1938.]

J. A. WALLACE, Respondent, v. H. L. KING et al., Appellants.

George H. Moore for Appellants.

Schell & Delamer for Respondent.

WHITE, J.—Action to recover damages for personal injuries received by reason of alleged negligence of the defendants. Judgment was entered in accordance with a verdict for the plaintiff in the sum of $6,500. Defendants appeal from the judgment.

Epitomized, the facts are that on a ranch in Los Angeles County a reservoir was being constructed, which at the bottom was approximately 350 feet long and 60 to 80 feet in width. The walls were sloped, and were approximately 25 feet high. This slope was what is known as a "half-to-one" slope, which means that for every foot which the wall rises it recedes half a foot. The reservoir had been excavated by machinery and the walls had been left in the rough, making it necessary to hand-trim them. This was done by men working on scaffolds which were suspended by ropes made fast to some stationary object on the top of the wall. The scaffolds were about 2½ feet wide by 6 feet long. As the men trimmed the walls, the loose dirt would fall to the base of the wall, so that when the trimming was complete upon a section there would be a pile of dirt about 2½ feet deep sloping outward from the base of the wall and extending 3 or 4 feet into the excavation. The workmen started trimming from the top of the wall. They would trim as much as could be reached and then the scaffold would be lowered, this being continued until they came close to the bottom, when they would get off the scaffold and work from the floor of the reservoir while standing on the loose dirt.

Working on the floor of the reservoir was a machine commonly known and designated as a "bulldozer", which is a large caterpillar tractor. On the front of this "bulldozer" there is a blade about 10 feet long and 3 feet wide, and very heavy, which hangs on arms and is raised and lowered by means of a cable. To raise the blade, the clutch is engaged and a lever is pulled toward the operator, while

to lower it, the lever is pushed away from the operator. To stop the blade while it is descending, the lever is pulled back toward the operator. This blade is curved somewhat to the front, so as to push the dirt along, but it can also be used to pull the dirt back. The blade descends in a forward arc, and drops very quickly. The bulldozer travels about one mile per hour.

As the dirt trimmed from the walls collected at the base, the bulldozer would approach the walls, drop its blade, back away, and drag the dirt from the base of the walls, distributing it over the floor of the reservoir. To do this, the bulldozer would approach to within 6 to 12 inches of the base of the wall and drop the blade as soon as it stopped.

On the morning of December 28, 1935, respondent was working for the owner of the ranch. His work consisted of trimming the walls, in which capacity he had been employed for about a month, during all of which time the bulldozer had also been working there. The evidence indicates that respondent was familiar with the manner in which the bulldozer approached the wall, dropped its blade and dragged the dirt away. During that time appellant King was operating the bulldozer, which belonged to appellant Willis & Sons, Inc., and which machine, together with the services of King, had been rented to the ranch owner by appellants Willis & Sons, Inc.

Respondent had been working on one of the scaffolds on the southwest corner of the reservoir, with one Maxwell. They had worked down to a point where they could reach the rest of the wall by standing on the loose dirt at its base. They then climbed up the ropes of the scaffold and pulled it to the top of the wall. Following a conversation had by respondent with his foreman, the former descended by means of the ropes on the adjacent scaffold to the south upon which another man was working. Respondent was going down to stop the bulldozer operator from removing any more dirt from that particular spot. When he got about half way down the scaffold he observed the bulldozer, which was about 7 to 10 feet from the wall and moving forward. There was evidence that respondent waived and shouted to the operator of the bulldozer to stop, and also evidence that appellant King, who was operating the bulldozer, was facing respondent at that time. The bulldozer stopped as respondent waved and shouted, coming to such stop about 3 or 4 feet away from

the wall, with the blade still up. There was also evidence that on previous occasions respondent had given appellant King signals while they were putting up scaffolds, to wave him out around them. There is evidence in the record that respondent continued down and got on the scaffold, which was about 5 feet above the level of the dirt at the base of the wall. It was testified that while he was on the scaffold respondent again observed the bulldozer and its operator, appellant King, the latter of whom was still facing respondent, the bulldozer remaining motionless in the same position where it had stopped when respondent had given the first signal and shout. It was testified that respondent again waved and shouted to appellant King. After letting himself down, respondent started to walk around to the side of the bulldozer and took a step while the blade was still raised. His feet sank in the loose dirt, but he did not slip or fall. At that same instant, the blade of the bulldozer dropped, striking respondent on the top of his right leg about midway between the ankle and the knee, and also caught his left foot across the instep. After the accident appellant King told respondent that he had seen the latter leaving the scaffold, but that it was too late to stop the blade.

Respondent suffered a transverse fracture of both bones of the right leg between the knee and ankle. These fractures showed a deformity and a free motion of the bones at the site of the fractures, and were of the sliding type, where one portion of the bone tends to slide forward and the other tends to slide back. The periosteum surrounding the bones also was injured. In addition, respondent received two comminuted fractures of the left foot approximately on the instep. There was no displacement, however, with regard to these fractures. Respondent also received an open wound on the anterior aspect of the shin about an inch in diameter.

Appellants cite as their first ground for reversal that the evidence is insufficient to sustain a verdict finding defendants liable, in that appellant King and respondent were employees of different masters engaged on the same premises in the prosecution of one construction project; that under the law they were both invitees of the owner, but as to each other they were strangers between whom there was no privity of contract, and that toward each other they bore the same duty of exercising ordinary care for their safety during the progress of the work as they owed to the public generally.

In short, it is appellants' claim in this regard that being without a duty to protect respondent, there can be no tortious liability imposed upon appellants.

Appellant King and respondent both being business invitees upon the premises in question, it was therefore incumbent upon King, in operating the bulldozer, to use reasonable care. In fact, it was at the request of appellants that the court so instructed the jury. The jury was entitled to conclude from the evidence that had appellant King looked in the direction where the men were working, he could not but have observed respondent both signaling and coming toward the bulldozer. Further, the jury, being the sole and exclusive judge of the credibility of witnesses who testified in the case, was not required to believe the testimony of appellant King as to what he saw and heard, or could have seen and heard, had he looked and listened. In fact, the state of the evidence before us is such that the jury could have inferred and concluded that appellant King actually did see the signals given by respondent and as well heard the latter's shouting. The jury was entitled to believe that the reason appellant King stopped his machine short of his accustomed stopping-place was because of the giving of the first signal and shout. The record before us contains ample evidence which, if believed by the jury, warranted a finding of negligence upon the part of appellant King, and therefore necessarily, by imputation, upon the part of his employer and coappellant.

Appellants next assert that respondent was guilty of contributory negligence which proximately contributed to his injury. They base this contention primarily upon their claim that respondent was in a place of safety as he stood upon his fellow workmen's scaffold; that he was acquainted with the mechanical operations of the bulldozer and was then cognizant of the fact that the blade of the machine was uplifted above the loose dirt preparatory to descending and gathering up the same. Appellants contend that respondent at the time he left the scaffold and came down upon the loose dirt knew that he was moving from a place of safety into a position of extreme danger, unless appellant King in charge of the bulldozer was aware to a certainty of respondent's intention to leave the scaffold. Appellants earnestly urge that then and there it became the duty of respondent to ascertain and assure himself that there was no lack of knowledge upon the part of appellant King that respondent was proceeding

into a position of extreme danger. ■ Undoubtedly it is the rule that one who is employed in a place where he is exposed to danger must exercise his faculties for his own protection; and if he approaches a place which he knows or ought to know is one of danger, he must take reasonable precautions to avoid being injured (*Gleason* v. *Fire Protection Engineering Co.*, 127 Cal. App. 754, 757 [16 Pac. (2d) 750], and cases therein cited); but while the degree of care required remains constant, the acts necessary to constitute such care may vary according to circumstances. (*Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689 [89 Pac. 976].) ■ Therefore, the question presented is whether a reasonably prudent man, situated as respondent was, seeing what he saw, and knowing what he knew, would have acted as respondent acted, and whether such conduct constituted care in proportion to the danger. If any act or omission on the part of respondent amounted to a want of ordinary care and was a proximate contributing cause of his injury, he cannot recover. (Sec. 1714, Civ. Code; 19 Cal. Jur., "Negligence", sec. 74, p. 644; *Steinberger* v. *California Elec. etc. Co.*, 176 Cal. 386 [168 Pac. 570].) In that connection, there is evidence in the record that prior to leaving his position on the scaffold, respondent signaled appellant operator of the bulldozer and shouted to him; that the machine thereupon immediately came to a stop at a point where it was not usual nor customary to drop the blade. Subsequently, and prior to leaving the scaffold, respondent again observed that the bulldozer was stationary and in the same position. Also respondent, at all times until he had left the scaffold, was in the plain range of vision of appellant operator, and was in the direction in which the latter was facing. Conceding the existence of evidence in contradiction of the foregoing, nevertheless, like the question of appellant's negligence, this question of respondent's contributory negligence was one of simple fact which was properly left with the jury, and it rejected appellants' theory.

■ Appellants complain of the action of the court in giving and refusing to give certain instructions, the narration of which in detail would unduly prolong this opinion. Concerning appellants' complaint that the court neglected to instruct the jury on the law of unavoidable accident, it is sufficient to say that there was no evidence upon which such an instruction could be based. The evidence all tended to

support the respective theories of the parties—that the accident was not unavoidable, but that it could have been avoided by the other party.

Appellants insist that certain instructions erroneously stated the doctrine of last clear chance. The claimed doctrine was not involved in this case, since respondent was in no danger whatever until appellant King had dropped the blade. The instructions complained of in this regard merely furnished a yardstick by which the existence or absence of negligence on the part of appellant King was to be measured.

It is the settled law of this state that before a reversal can be ordered on account of error committed in the giving or refusing of instructions to the jury, it must affirmatively appear, and the appellate court must affirmatively be of the opinion, that there has been a miscarriage of justice. (*Haney* v. *Takakura*, 2 Cal. App. (2d) 1, 9 [37 Pac. (2d) 170].) A consideration of the entire evidence in this case does not admit of the conclusion that without the claimed error in the instructions the verdict would have been different from the verdict actually rendered by the jury. For us to say that we cannot determine from a consideration of all the evidence that the error complained of did not have that result, is not sufficient. Before we can order a reversal, our conclusion in the premises must be an affirmative one. (*Etienne* v. *Kendall*, 202 Cal. 251 [259 Pac. 752] ; *Haney* v. *Takakura, supra,* and cases therein cited at page 10.)

Appellants concede that the claimed errors in the admission or rejection of evidence may not of themselves be sufficient to warrant a reversal of the judgment, but urge that taken in conjunction with other alleged errors, they demonstrate that appellants suffered prejudice through such rulings. The errors complained of in this regard were in no wise prejudicial to appellants' case.

Finally, appellants claim that the amount of the award herein was excessive. The nature of the injuries sustained by respondent is hereinabove set forth, and it might be noted that the special damages proved amounted to $2,812. However, no contention is made that the verdict was the result of passion or prejudice on the part of the jury, but the sole contention is that this court should adjudge a different amount to be the reasonable damages suffered. It is, of course, elementary that the amount of the award is a matter

for the trial court and jury to determine, and that an appellate court cannot fix a different amount, in the absence of a showing that the verdict was the result of passion or prejudice.

For the foregoing reasons, the judgment appealed from is affirmed.

Doran, Acting P. J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 16, 1938.