[Civ. No. 21163.   Second Dist., Div. One.   Dec. 2, 1955.]

MILTON M. VERNON, Respondent, v. OWL TRUCK AND CONSTRUCTION COMPANY (a Corporation) et al., Appellants.

Moss, Lyon & Dunn, Sidney A. Moss and Henry F. Walker for Appellants.

A. Joseph Sherwood for Respondent.

WHITE, P. J.—Defendants have appealed from a judgment for plaintiff in his action for damages for injuries to his person when he fell from the bed of the truck owned by defendant Owl Truck and Construction Company while it was standing motionless on the premises of plaintiff's employer, Southwest Engineering Company.

The evidence is contradictory in almost all respects. The pertinent portions will be stated in connection with the issues to be determined. Appellants do not question the sufficiency of the evidence to support the verdict and judgment, but urge that two instructions given constitute prejudicial error requiring reversal of the judgment.

One of the instructions so cited as error reads as follows: "A person, who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such person to fail to anticipate injury which can come only from a violation of law or duty by another." Appellants' contention is that the two sentences of the above quoted instruction should have been followed by another sentence, as in B.A.J.I. 138, and that the instruction without that third sentence is an erroneous and incomplete statement of the applicable law. The omitted sentence is: "However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty." In support of this contention, appellants cite and rely upon the decisions next discussed.

In *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157 [195 P.2d 416], it was held that to give the entire instruction was not error and that the instruction as a whole did not impose a duty upon one to anticipate negligence on the part of others. At page 166, the court said: "It is but a statement as to that common type of negligence, the unreasonable failure to observe what is going on about one, including the negligence of others." Judgment for plaintiff growing out of an intersection collision of two automobiles was there affirmed.

The judgments in *Angier* v. *Bruck*, 56 Cal.App.2d 55 [131 P.2d 876], and *Carlson* v. *Shewalter*, 110 Cal.App.2d 655 [243 P.2d 549], were reversed for the reason that, under the facts of those cases, an instruction substantially as given in the instant action and hereinbefore quoted should have been

qualified by language substantially the same as the third sentence of B.A.J.I. 138, also hereinbefore quoted.

In *Angier* v. *Bruck, supra,* there was evidence from which the jury might have found that respondent saw appellant's automobile traveling toward the point of impact at a speed too great to be stopped before the impact, and that respondent could have avoided the collision.

In *Carlson* v. *Shewalter, supra,* the jury was instructed that "in making the left-hand turn Carlson (appellant) had violated the law . . . that negligence of the respondent could not be predicated on his failure to anticipate that Carlson would make an unlawful movement on the highway" and there was evidence from which the jury could have found that the front end of Carlson's car had been turned across the highway awaiting an opportunity to complete the left-hand turn in plain view of respondent during the time it took him to drive almost a block. In that decision, at page 659, it is said: "If the jury had been specifically instructed that respondent could not continue to rely on Carlson's obedience of the law after having the opportunity by the use of reasonable care to discover its violation, we cannot say that their verdict would not have been for appellant under the evidence."

In the instant action, the alleged negligence of appellants which was impliedly found by the jury to have caused plaintiff's injuries was not so obvious as either the excessive speed toward the intersection in *Angier* v. *Bruck, supra,* or the illegal left-hand turn into a driveway in *Carlson* v. *Shewalter, supra.* Those violations were, or should have been, observed by the other party in time for him to prevent the injury, and the exception should not have been omitted from the instruction as to one's right to rely upon obedience of the law by others. In the instant action, however, respondent contends that "The evidence was not such as to entitle defendants to have such exception included as part of this instruction."

The record on the instant appeal contains evidence showing, without conflict, that: Defendant Owl Truck and Construction Company's truck, driven by defendant Porter, called at the premises of plaintiff's employer, Southwest Engineering Company, for a load. Defendant Porter was directed to a certain loading bay where a heat exchanger, 26 inches in diameter, 192 inches long, weighing 9,300 pounds, and with projections from the generally cylindrical shape pro-

tected by wooden crating, was loaded onto the front portion or tractor of defendants' equipment. Porter was then directed to and did move the truck about 50 feet to a loading area near another crane where another heat exchanger, 36 inches in diameter, 192 inches long, weighing 19,900 pounds, and having 12-inch legs, was loaded onto the semitrailer on 4x6's. Porter was then directed to and did drive ahead a few feet so that the loading area could be used by other trucks. Porter placed two chains with binders across each of the heat exchangers and attached the chains to both sides of the tractor and trailer beds. The front chain across each heat exchanger had its binder on the nondriver's side and the rear chain across each had its binder on the driver's side. Pulling down on the lever of any binder would tighten the chain to which that binder was attached. After the truck was stopped in this third location, plaintiff boarded it, taking with him four tags and a small stapling gun for the purpose of stapling a tag to each side of each of the heat exchangers. The tags could be stapled only to the wooden crates protecting the projecting portions of the heat exchangers. After two tags had been placed on the rear heat exchanger and one on the driver's side of the front heat exchanger, and when plaintiff was within a few steps of the place on the nondriver's side where the fourth tag was to be stapled, he fell from the bed of the tractor to the cement loading area and was severely injured. Either plaintiff or Porter could have been seen by the other across the 26-inch heat exchanger.

As to all other questions of fact, the evidence is in direct conflict. Contrary to respondent's contention, the instant appeal is not one where an appellate court looks only at the evidence most favorable to respondent. If the evidence favorable to defendant, regardless of contradictions and inconsistencies, would have justified the jury's finding that it was or should have been apparent to plaintiff that defendant Porter was about to tighten, or intended to tighten, the chain while he was in the act of stepping over it, then the qualifying instruction as in B.A.J.I. 138 would have been applicable. We therefore, summarize both versions.

Plaintiff testified that he himself directed defendant Porter to the loading bay where the first unit was loaded and that he then told Porter he would have to board defendants' equipment after the heat exchangers had been loaded in order to tag them. Defendant Porter denied that it was plaintiff who directed him to the loading bay and testified

that no one had told him that anyone would board the tractor or trailer for any purpose.

Plaintiff testified that when he boarded the tractor Porter was standing about 15 to 20 feet away on the driver's side of the equipment talking with a man, and that he climbed onto the truck on that side where he was in plain view of Porter. At that time the front chain and the two rear ones were tight and the rear chain over the front heat exchanger was lying flat on the bed of the tractor. Defendant testified that he had tightened the two chains over the unit on the tractor before moving it to load the second heat exchanger onto the trailer, that both chains on the second unit were tightened before the equipment was moved to the place where plaintiff boarded the equipment and fell from the tractor bed; and that those chains were not loosened at any time after he first tightened them.

Plaintiff and several other witnesses testified that the bill of lading was not given to Porter until after the accident. Porter testified that he went to the office, stood in the door waiting for the bill of lading to be finished, saw plaintiff on the driver's side of the tractor while he was waiting in the office door, that he was given the bill of lading, walked from the office door to the cab of the tractor, put the bill of lading in the seat, took a red flag from under the seat, walked along the driver's side of the tractor and trailer and started to tie the red flag to the protruding rear end of the heat exchanger on the trailer, and then heard plaintiff cry out after he had fallen.

Plaintiff testified that as he proceeded forward on the non-driver's side of the tractor bed he was watching where he stepped; that as he approached and started to step over the chain there was no movement of the chain whatsoever; that, while his foot was raised to step over it, the chain hit his leg just under the knee and caused him to fall to the cement loading area and injure himself; that while he was on the ground he saw Porter's feet and legs on the driver's side below the tractor bed near the binder of the chain which had caused him to fall.

Two of plaintiff's coemployees testified that defendant Porter told them he was not sure just how plaintiff was hurt "but he must have tripped over the chain as he was tightening up the chain." Porter denied that he had made any such statement.

Accepting as true, as the jury apparently did, the testi-

mony that the chain was lying flat on the bed of the tractor when plaintiff began to step over it, he had the right to expect that it would not be tightened at that instant so as to strike his leg and cause him to fall from the truck.

Whenever the chain was tightened across the load it was done by pulling down the lever of the binder. There is no evidence that any movement by Porter showing an intention to pull the lever would necessarily have been made before plaintiff's step over the chain was begun, in order that the chain would strike plaintiff's leg before his step was completed. Plaintiff had been on the truck long enough to step around the tightened chains and over the flat one on the driver's side, and twice around one of the tight chains on the nondriver's side. During that time, according to plaintiff, he had seen Porter talking with a man and making no movement toward or about the truck; and, according to Porter, during that time, he had waited some minutes in the office door, he had seen plaintiff on the truck, had walked from the office, put his bill of lading on the seat, removed the red flag from under the seat, and walked along the driver's side the full length of the equipment. There is no evidence in the record on the instant appeal to which the instruction limiting and qualifying plaintiff's right to assume that Porter would exercise ordinary care for his safety was applicable. The giving of the instruction without the limitation was not error in this case.

In the instant action, the record contains 53 pages of instructions given, both general and specific. It may be noted, also, that the following instruction was given as requested by defendant: "It was the duty of the plaintiff, Milton M. Vernon, to use his sense of sight as an ordinarily reasonable and prudent person would have used it under the circumstances as you find them to have existed at the time of the accident. If the plaintiff failed to so use his sense of sight, he was guilty of negligence, and if it contributed proximately to the occurrence of the accident in any degree, then your verdict must be in favor of the defendants."

Appellants requested that the following instructions be given as their 6th, 7th and 8th:

(6th) "Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or to others."

(7th) "Inasmuch as the amount of caution used by the ordinarily prudent person varies in direct proportion to the

danger known to be involved in his undertaking, it follows that in the exercise of ordinary care, the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put the matter in another way, the amount of caution involved in the exercise of ordinaary care increases or decreases as does the danger that reasonably should be apprehended.

"Evidence as to whether or not a person conformed to a custom that had grown up in a given locality or business is relevant and ought to be considered, but is not necessarily controlling on the question whether or not he exercised ordinary care, for that question must be determined by the standard of care that I have stated to you."

(8th) "The law demands that one who is working in a place where he is exposed to danger shall himself exercise his faculties for his own protection.

"He is not in the exercise of ordinary care unless, at each stage of his work, he makes an effective use of his bodily and mental faculties, and observes as attentively as is reasonably possible under the circumstances the conditions of the instrumentalities by which his safety may be affected, and the results of their operation by himself or others, in so far as that operation may tend to subject him to danger."

Instructions 6th and 7th were given as requested, but, in lieu of 8th above quoted, the court of its own motion instructed as follows:

■ "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury or requires that, in the line of his duty, he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, in so far as they limit the caution that he may take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care."

It is the instruction last above quoted that appellants cite as prejudicial error.

About 20 decisions are cited by appellants as authorities requiring reversal because of the giving of that instruction. They include *Gleason* v. *Fire Protection Eng. Co.*, 127 Cal. App. 754 [16 P.2d 750], and *Weddle* v. *Heath*, 211 Cal. 445 [295 P. 832]. As stated by Mr. Justice Moore, speaking for the court, in *Hechler* v. *McDonnell*, 42 Cal.App.2d 515, 518 [109 P.2d 426], these cases cited by appellant "are authority for rejecting the demands of one who, being familiar with a

building and its patent defects, was negligent as a result of which he received his injuries."

More nearly analogous is the case of *Wallace* v. *King*, 27 Cal.App.2d 174 [80 P.2d 523], where a workman who was coming down a rope on the side of a 25-foot excavation signaled the operator of a bulldozer at the bottom to stop, the bulldozer was stopped about three feet from the bottom of the rope with its blade motionless in the air, the workman then dropped from the rope and was badly injured by the blade's being dropped on him just as he landed on the loose dirt at the bottom.

In *Wallace* v. *King, supra,* at page 180, this court said: "Undoubtedly it is the rule that one who is employed in a place where he is exposed to danger must exercise his faculties for his own protection; and if he approaches a place which he knows or ought to know is one of danger, he must take reasonable precautions to avoid being injured (*Gleason* v. *Fire Protection Eng. Co.*, 127 Cal.App. 754, 757 [16 P.2d 750]) ; but *while the degree of care required remains constant, the acts necessary to constitute such care may vary according to circumstances.* (*Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689 [89 P. 976].) Therefore, the question presented is whether a reasonably prudent man, situated as respondent was, seeing what he saw, and knowing what he knew, would have acted as respondent acted, and whether such conduct constituted care in proportion to the danger. If any act or omission on the part of respondent amounted to a want of ordinary care and was a proximate contributing cause of his injury, he cannot recover." (Emphasis added.)

While the instruction last complained of by appellant in the instant action is not without ambiguity, nevertheless no citation of authority is necessary for the statement that instructions must be considered in their entirety. When viewed in their entirety, they correctly expound the law applicable to the issues framed by the pleadings and raised by the evidence. We are satisfied that the challenged instructions cannot be said to have misled or confused the jury and certainly no prejudice ensued to appellant therefrom. The instruction in question, when read in conjunction with all the other instructions given, may well be regarded as being intended and understood by the jury to be a statement of the law that, as to one who is employed in a place of danger, "while the degree of care required remains constant, the acts necessary to

constitute such care may vary according to the circumstances."

A consideration of the entire record in this case does not admit of the conclusion that without the claimed error in the instructions the verdict would have been different from the verdict actually rendered by the jury.

The judgment is affirmed.

Doran, J., and Nourse (Paul), J. pro tem.,* concurred.

A petition for a rehearing was denied December 27, 1955. Nourse (Paul), J. pro tem., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied January 25, 1956.

*Assigned by Chairman of Judicial Council.