[Civ. No. 17288.   First Dist., Div. Two.   June 19, 1957.]

MARTIN J. MULLIGAN et al., Appellants, v. WEST COAST FAST FREIGHT, INC. (a Corporation) et al., Respondents.

Leslie C. Gillen and Herbert Chamberlin for Appellants.

Bledsoe, Smith, Cathcart, Johnson & Phelps and R. S. Cathcart for Respondents.

KAUFMAN, P. J.—The complaint herein seeks damages for personal injuries to plaintiffs, Martin J. Mulligan and Luke Morley, passenger and driver, respectively, of a California state highway patrol car which was involved in an accident on the lower deck of the San Francisco-Oakland Bay Bridge on October 26, 1950. A trial before a jury resulted in a verdict against both plaintiffs, in favor of the defendant, West Coast Fast Freight, Inc., and its truck driver, the defendant, Charles Leon Murrell. Plaintiffs appeal from the judgment entered on the verdict on the grounds that the evidence established as a matter of law that the defendants' negligence was the sole proximate cause of the accident and various alleged errors in the lower court's instructions to the jury.

The facts as disclosed by the record are as follows: The afternoon on which the accident occurred was a rather stormy one, with hard rain and a whipping south wind. There was no fog, however, and visibility was good, for about one mile. Shortly before the accident two barges had broken loose from their moorings south of the bay bridge, drifted to the north and had become lodged against one of the piers of the bridge, about 1 mile west of the toll plaza. Two bridge officials, Murphy and Marsh, in two separate state owned vehicles had driven west from the toll plaza on the lower deck of the bridge, to investigate the barge incident. Their vehicles were parked in the westbound lane, one behind the other, with the Murphy vehicle just west of the Marsh vehicle, blocking westbound traffic for about 40 feet. Both of these vehicles were displaying red flashing lights in their rear windows. The defendant, Murrell, a truck driver and employee of the defendant, West Coast Fast Freight, Inc., was driving west on the lower deck of the bridge on the afternoon of the accident. The westbound lower deck highway is one big wide lane where it

comes off the main road and divides into two lanes just east of the scene of the accident, where the white lines demark three lanes, each about 11 feet wide; one on the north side of the bridge for westbound traffic, one on the south side of the bridge for eastbound traffic, and one in the center for passing. The highway from the toll plaza area to the portion of the bridge which is over water jogs to the left before going west into a slight down-hill straightway about two-thirds of a mile in length, so that the straightway is not visible from the section immediately west of the toll plaza. Murrell was traveling at about 20-25 miles per hour when he left the toll plaza; just as the highway squared around into the straightway, he noticed the Marsh vehicle parked 200-300 feet in front of him in the westbound lane. When he was about 75 feet to the rear of the Marsh vehicle, Murrell slowed to 15 to 18 miles an hour, and without first stopping swung into the center lane for the purpose of passing. At this time he noticed the Murphy vehicle parked immediately in front of the Marsh vehicle. Immediately after he had pulled into the center lane, Murrell observed a flashing red light mounted on a California state highway patrol car, which was headed east in the center lane about 200-300 feet away. Murrell testified that he did not hear a siren at this or any other time. However, immediately after the accident he told the investigating officer that just as he was changing into the center lane he noticed the patrol car coming with the red light on and siren going. Traffic in the eastbound lane was exceedingly heavy consisting of a long line of trucks closely following one another. Murrell first increased his speed by a mile or two an hour in order to get past the parked cars, but then he noticed the patrol car skidding and immediately brought his truck to a stop. The Highway Patrol Officer who subsequently made the accident report testified that the truck was stopped two feet to the east of the rear bumper of the Murphy vehicle. The truck driven by Murrell was 20 feet long and carrying a medium heavy load; the headlights were on and the windshield wipers operating. Murrell testified that a passing maneuver required about 40 feet. The day of the accident was appellant Mulligan's first day on duty after the completion of his highway patrol training course. Appellant Morley was the senior officer assigned to instruct him on that day. The two officers were in the vicinity of Eighth and Townsend Streets in San Francisco in the patrol car driven by Morley, when they received a radio message to investigate an accident of unknown nature in which some high

voltage wires were down at the foot of University Avenue in Berkeley. The code message ordered them to ''expedite'' which meant to get there as fast as possible without delay and permitted the use of the siren and red lights on the way. However, they first drove east on the upper deck of the bridge with the red light but without sounding the siren. Because of the heavy traffic conditions on the upper deck they turned off at Treasure Island after the tunnel and swung around onto the lower deck. Both of the appellants testified that at this time the siren was going and the lights flashing. The eastbound lane was full of trucks, so the patrol car entered the passing lane, but was forced back into the eastbound lane by a westbound Key System bus. At this time the patrol car was traveling at a speed of 40 to 45 miles and continued at that speed until the accident. After the bus had passed, Morley again moved into the center passing lane and immediately observed Murrell's truck at a distance of about 300 feet just as it was pulling into the passing lane. Morley testified that at that time he could not estimate the speed of the truck, or determine whether or not the two state vehicles in the westbound lane were moving. When he was about 250 feet west of the truck Morley applied his brakes lightly. At 200 feet he applied the brakes hard, which caused the patrol car to skid sideways for 169 feet before colliding broadside with the Murphy vehicle. Appellant Mulligan was thrown from the patrol car and remained unconscious. After the accident the patrol car was facing north at an angle across the center and westbound lane. The rear of the patrol car was about 8 feet from the respondent truck, and the front of the patrol car about 6 feet from the front of the Murphy vehicle. Although none of the eyewitnesses saw the actual impact between the truck and the patrol car, it was assumed from the position of the various vehicles after the accident.

Appellants' main contentions on appeal are that the evidence established as a matter of law that the negligence of the respondents was the sole and proximate cause of the accident, and that the jury was improperly instructed as to the operation of the emergency vehicle statute, so as to impose upon the driver of the patrol car the duty of sounding the siren at all times and in a certain manner.

It is not disputed that the patrol car was an emergency vehicle responding to an emergency call and displaying the required red and blue lamp, or that Murrell was operating a truck belonging to West Coast Fast Freight within the scope

of his agency. The issues all bear upon the question of whether or not the police car was being operated in such a manner as to accord to its driver and passenger, the appellants herein, the emergency vehicle privileges of Vehicle Code, section 454, and to impose upon the respondent's truck driver the duties defined in Vehicle Code, section 554. Among the duties imposed on a driver apart from Vehicle Code, section 554, and included in the matters from which emergency vehicles may be exempted under Vehicle Code, section 454, are the provisions of Vehicle Code, section 526 which prescribes rules for passing on three lane roadways. In 1950, sections 454 and 554, so far as relevant, of the Vehicle Code read as follows:

"454. Exemptions to Authorized Emergency Vehicles. The driver of an authorized emergency vehicle shall be exempt from those provisions of this code herein set forth under the following conditions:

" (a) Said exemptions shall apply wherever any said vehicle is being driven in response to an emergency call or when used in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm.

" (b) Said exemptions shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to others. Under the circumstances hereinabove stated, any said driver shall not be required to observe those regulations contained in Chapter 3 or in Chapters 6 to and including Chapter 13 of Division 9 of this code, but said exemptions shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section."

"554. Conduct of Drivers, Motormen and Pedestrians on Approach of Authorized Emergency Vehicles. Upon the immediate approach of an authorized emergency vehicle giving audible signal by siren and having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle:

" (1) The driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and thereupon stop and remain in such position until such authorized emergency ve-

hicle has passed, except when otherwise directed by a police or traffic officer.

"(2) . . ."

As pointed out by this court in *Washington* v. *City & County of San Francisco*, 111 Cal.App.2d 368, at pages 371 and 372 [244 P.2d 774]:

"We conclude that sections 454 and 554, read together, mean that (to enjoy exemption from the speed and traffic law requirements) the driver of an emergency vehicle (in addition to displaying the red light) must give audible signal by siren, as a warning to others using the highway, when under all the circumstances it is reasonably necessary to do so, and in such a case he must sound the siren in such a manner, with such audibility, as will afford the others a reasonable opportunity to yield the right of way. 'Others,' of course, means persons of reasonably good hearing who are giving attention to their surroundings in observance of their duties as users of the public highways.

"This requirement presents in each case these questions of fact: (1) Was it reasonably necessary, under all the circumstances, to give audible signal by siren, as a warning to others? (2) If so, did this driver give signal by siren? (3) If so, did he give audible signal by siren?"

The instruction on the dual obligation of shining the light and blowing the siren was one requested by the appellants. A similar instruction has been approved by this court in *Davidson* v. *County of Marin*, 147 Cal.App.2d 54 [304 P.2d 743]. The appellants and the two eyewitnesses testified that they heard the siren; the siren button was on after the accident. The respondent, however, in contradiction to his statement made immediately after the accident, testified that he did not hear the siren at any time. It is not clear how soon before the impact the siren was heard by the eyewitnesses; there is also evidence that the weather and traffic conditions were such that Murrell could not hear the siren at all or until too late. Appellants point out that the law does not require the continuous sounding of the siren, but only a fair reasonable warning, and that the light alone could suffice as such warning. We agree with the appellants, but as indicated above these are· questions of fact for the jury to consider under proper instruction. We do not think the instruction complained of here was erroneous or prejudicial. The jury was also instructed that where there is evidence that a person did not see or hear that which was in plain sight or clearly audible, there is either

a conflict in the evidence or negligent inattention. Appellants rely on *Reed* v. *Simpson,* 32 Cal.2d 444 [196 P.2d 895]. However, in that case, the verdict for the defendants was reversed as the lower court had erroneously instructed the jury that the officer was not entitled to the exemption of section 454 as a matter of law. The court pointed out that the issue was for the jury to determine.

Appellants base their argument on their contention that in the instant case, the evidence as a matter of law established that the negligence of the respondents was the sole and proximate cause of the accident. They cite *Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d 834], in which it was held that the defendant who violated a pedestrian's right of way was guilty of negligence as a matter of law in the absence of reasonable explanation for his conduct. The very portion of *Gray* v. *Brinkerhoff* quoted in the appellants' brief defeats their argument as the court points out that negligence is a matter of law only if "reasonable men following the law can draw but one conclusion from the evidence presented." The instant case is not one in which only one conclusion can be so drawn. Here, the jury could well have believed that the respondent was not negligent as there is evidence that he did not see the patrol car until he was in the center lane, that he was driving at a safe speed and it is admitted that he brought the truck to a stop before the point of impact. While other witnesses testified that they heard the siren, the respondent denied hearing the siren. There is evidence that the weather and traffic conditions might have made it difficult for Murrell to hear the siren. ■ Whether or not the driver of an emergency vehicle is entitled to the exemptions provided by section 454 is a question of fact for the jury. (*Washington* v. *City & County of San Francisco,* 111 Cal.App.2d 368 [244 P.2d 774] ; *Davidson* v. *County of Marin, supra;* *Reed* v. *Simpson, supra;* *Pagels* v. *City & County of San Francisco,* 135 Cal.App.2d 152 [286 P.2d 877].) One of the eyewitnesses to the accident, the driver of a truck in the eastbound lane, testified that because of the weather conditions he was traveling at a speed of 20 miles an hour; the respondent was traveling at this speed; the officer who investigated the accident testified that in his opinion a safe and proper speed under the circumstances was 30 to 35 miles per hour; both of the appellants testified that the patrol car was traveling at a speed of 40 to 45 miles an hour. ■ The jury might have concluded from the evidence that the patrol car was not entitled to the exemption of

Vehicle Code, section 454, because the speed maintained under the circumstances constituted an arbitrary exercise of the privileges extended by the section, or that it was not being driven with due regard for the safety of all persons using the highway, as the respondent had not been given the opportunity to yield the right of way. (*Lucas* v. *City of Los Angeles,* 10 Cal.2d 476 [75 P.2d 599]; *Goldstein* v. *Rogers,* 93 Cal.App.2d 201 [208 P.2d 719]; *Washington* v. *City & County of San Francisco, supra*; *Duff* v. *Shaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655 [283 P.2d 91].) Even assuming that the appellants were properly operating the siren so as to be entitled under Vehicle Code, section 454, to travel at a speed of 40-45 miles and to disregard the provisions of Vehicle Code, section 526, and that respondent violated his duties under Vehicle Code, sections 526 and 554, it is still for the jury to determine whether the violation of the statute proximately contributed to the cause of the accident and whether such violation was justifiable under the circumstances. (*Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d 279]; *Ornales* v. *Wigger,* 35 Cal.2d 474 [218 P.2d 531].) The jury could also have concluded that Murrell was not negligent and did the only reasonably possible thing by bringing the truck to a stop. From the evidence, the jury could also have concluded that the accident was proximately caused by the presence of the two parked cars on the bridge; or that the accident occurred without fault on the part of any person. The matter of negligence here, therefore, was properly left to the jury.

Appellants, relying on *Carlson* v. *Shewalter,* 110 Cal. App.2d 655 [243 P.2d 549], further contend that the trial court committed prejudicial error in its instruction that a person exercising ordinary care has a right to assume that others will obey the law, by not adding the qualification that one may not continue to assume that the law is being observed after knowing or having an opportunity by use of reasonable care to ascertain that the law is not being observed. In the Carlson case, the court pointed out that the failure to so qualify a similar instruction was, under the facts of that case, prejudicial error; the jury had also been instructed that the law had been violated. Whether or not instructions are proper must be decided on the facts of each case. In the instant case, appellants have proceeded on the theory that they were obeying the law. Here, the qualification could apply only if the appellants were not obeying the law and Murrell knew or should have known that they were not obeying the law. There-

fore, we agree with respondents that the instant case falls under the rule of *Vernon* v. *Owl Truck & Const. Co.*, 137 Cal. App.2d 437 [290 P.2d 603], as there was not sufficient evidence to make the qualification applicable.

■ Appellants also contend that it was prejudicial error to submit the issue of contributory negligence as to appellant Morley to the jury. We think that under the facts the issue was properly left to the jury. (*Lowell* v. *Harris*, 24 Cal.App. 2d 70 [74 P.2d 551]; *Pinello* v. *Taylor*, 128 Cal.App. 508 [17 P.2d 1039].) The jury was also correctly instructed that any negligence on the part of Morley could not be imputed to Mulligan. As the jury also denied relief to Mulligan, it would appear that the jury found no negligence on the part of Murrell and did not even reach the issue of contributory negligence.

■ Respondents in their brief suggest that the court dismiss this appeal on its own motion for unreasonable delay, as the opening brief was not filed until three years after the filing of notice of appeal and the completion of the transcript, and as no explanation has been offered by the appellants. However, as respondents have not seen fit to file a motion to dismiss, and chose instead to file a reply brief on the merits, this is not a proper case for this court to exercise its inherent power.

We conclude that this cause was fully and fairly tried and that no prejudicial error appears in the record before us.

Judgment affirmed.

Appellants' petition for a hearing by the Supreme Court was denied August 13, 1957. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.

Dooling, J., and Draper, J., concurred.