[Civ. No. 17524.   First Dist., Div. One.   Jan. 29, 1958.]

PHYLLIS BUCK et al., Appellants, v. STANDARD OIL COMPANY OF CALIFORNIA (a Corporation) et al., Defendants; JOHN ANDREW RUSTAN, as Executor, etc., Respondent.

[Civ. No. 17522.   First Dist., Div. One.   Jan. 29, 1958.]

PHYLLIS BUCK et al., Plaintiffs and Appellants, v. STANDARD OIL COMPANY OF CALIFORNIA (a Corporation) et al., Respondents; BOND AND RUSHING (a Partnership) et al., Defendants and Appellants.

Newman, Marsh & Furtado and Manuel L. Furtado for Plaintiffs and Appellants.

Edward A. Friend for Defendants and Appellants.

Bledsoe, Smith, Cathcart, Johnson & Phelps, Wilbur J. Russ, Wadworth & Souza and John Wilson for Respondents.

McMURRAY, J. pro tem.*—Two appeals are here involved; one is an appeal from a judgment entered on the pleadings against the plaintiffs, and the other following a verdict by a jury. The first appeal, numbered 17524, is hereafter referred to as the Buskovich appeal, and the second appeal, numbered 17522, is made up of two appeals, one by the plaintiffs from a judgment in favor of defendant Standard Oil Company of California, and the other from a judgment in favor of the plaintiffs and against the defendant Bond and Rushing and from the denial of that defendant's motion for judgment notwithstanding the verdict.

On October 27, 1954, sometime shortly after 6:30 in the evening Paul and Phyllis Buck left the town of Tracy to go watch the Wednesday night fights on television at the wife's parents' house, which was some two miles westerly of Tracy. Paul Buck drove the car, and while proceeding westerly on United States Highway 50 he saw a puddle on the highway after he had passed a bus. He put his foot on the brakes and started to skid. He had no control over the car; his forward vision was suddenly obscured, and he could see nothing for a moment, but after he hit the main portion of the puddle, the car skidded sideways and through the side window he could see another car coming at him. This other car struck the Bucks' car and Mrs. Buck was thrown out onto the highway and received injuries. Plaintiff Paul Buck later ascertained that the matter that had obscured his vision was oil spraying across the highway from a broken oil pipe line on the property of one Nicholas Paul Buskovich.

Before the occurrence of this accident, one Martin had undertaken to level the land belonging to Mr. Buskovich, and, after having completed the leveling, had been engaged for several days in subsoiling the property. Subsoiling, it appears from the evidence, is an operation wherein a piece of heavy equipment, weighing approximately 15,000 pounds and bearing tines or rippers two feet or more in length, is pulled across the land in such manner as to cause the tines to rip the soil so as to allow its aeration. The depth of the operation depends upon the landowner's instruction, but there is testimony that ordinarily the subsoiling is requested to be as deep as possible. Buskovich, the owner of the property upon which

*Assigned by Chairman of Judicial Council.

the subsoiling operation was taking place and across which the Standard Oil Company of California had acquired an easement to lay and maintain a pipe line, died three days before the accident here involved, and his funeral was held the morning of the day the accident occurred.

Before his death, Buskovich had employed T. R. Martin to level his land. Martin, who had previously solicited land-leveling jobs in the vicinity, had discussed with defendant Bond and Rushing the purchase or rental of a tractor to do such work. He had not sufficient financial stability to accomplish either of these things, but reached an agreement that he would receive, from the total price for operation of the Bond and Rushing tractor, the sum of $3.00 per hour plus 5 per cent for soliciting such employment.

The work on the Buskovich property was staked out by Bond and Rushing and the cut-and-fill map for Martin's guidance was made by them. Martin testified that Bond and Rushing came to the Buskovich property almost every day to help with adjustment, greasing and oiling of the tractor and sometimes to see if he was getting along all right; and would suggest ways to do a good, cheap job for the owner. Bond and Rushing authorized Martin to buy necessary fuel and charge it to them. Bond and Rushing submitted a bill to the Buskovich estate for the work done by Martin, which at the time of trial had not been paid.

The Buskovich appeal arises from a judgment on the pleadings against the plaintiffs; that judgment was based upon a cause of action alleged against John Rustan, the executor of the deceased Buskovich's estate. Plaintiffs, in appealing, cite section 573 of the Probate Code, which provides in part: ". . . all actions . . . upon any liability for physical injury . . . may be maintained . . . against executors and administrators in all cases in which the cause of action whether arising before or after death is one which would not abate upon the death of their respective testators or intestates . . .'' and Civil Code, section 956, which provides in part: "A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action." In addition to these two code sections, the plaintiffs attempt to find support for their position in the provisions of the wrongful death statute, section 377 of the Code of Civil Procedure.

Aside from citing these three code sections, however, the plaintiffs have not, in their appeal from the judgment entered in favor of the Buskovich estate, furnished any further authorities.

█ A motion for judgment on the pleadings is like a general demurrer, and the court's consideration is confined to the face of the pleadings under attack. (*Davis* v. *City of Santa Ana*, 108 Cal.App.2d 669, 685 [239 P.2d 656]; Witkin, California Procedure, vol. 2, § 67, p. 1704.) █ Plaintiffs place great reliance upon the words of the Probate Code section "whether arising before or after death," but ignore the words "all cases in which the cause of action . . . is one which would not abate upon the death of their respective testators. . . . " It would be difficult, indeed, to charge a person with the duty of ordinary care for an act which took place three days after his death. The sections cited by the plaintiffs are assuredly survival-of-action sections, but they do not, by the most ingenious and tortured construction, create any new cause of action against a deceased after his death. The respondent Rustan argues at some length as to termination of employment and cites several cases to the effect that an action cannot be maintained against the personal representative of an estate for a tort committed by him. Certainly, under the pleadings which are set forth in the record before us, there is no allegation of any breach of duty by the deceased, but a mere allegation of present negligence on his part on a date three days after his death. Under this state of facts, it is apparent that the judgment on the pleadings was properly entered. The judgment appealed from in the Buskovich appeal is affirmed.

### PLAINTIFFS' APPEAL

█ The appeal by plaintiffs from the verdict in favor of the Standard Oil Company contains, among the contentions on appeal, a contention that an instruction given relative to the duty of the Standard Oil Company to warn the subsoiler was erroneous.

The instruction complained of reads as follows: "The law does not require the duty of an idle act. If you find from the evidence herein that Martin knew of the dangers attendant to his subsoiling operation, if any there were, the Standard Oil Company of California was under no obligation to give him warning of such dangers that he was already aware of."

In addition to the instruction complained of, the court also instructed, at the plaintiffs' request, as follows: "In this case, it has been admitted that the defendant Standard Oil had a company rule requiring certain employees to report and give warning to farm equipment operators working farm land adjacent to the pipe line. In determining whether or not the Standard Oil Company, acting through its agents and employees, was negligent in its conduct toward the plaintiffs, you may consider whether or not the company rule was violated by its agents or employees." The record before us discloses that Martin had been told by one Breuer of the location of the pipe line. This was not an indication of the exact location of the pipe, but it appears that it was the general location. If this testimony was believed by the jury, the instruction complained of by plaintiffs was properly given. Actual knowledge in such case would be sufficient to relieve Standard Oil Company of its liability in this instance. ■ Where one has actual knowledge of the existence of a dangerous condition, the question of warning becomes immaterial and can have no causal connection with the injury sustained. (*Markwell* v. *Swift & Co.*, 126 Cal.App.2d 245, 251 [272 P.2d 47].)

■ Plaintiffs, in their appeal, also urge that it was error to give the instruction contained in B.A.J.I. Number 138 without adding the qualification contained in the second part of that instruction. The instruction as given was as follows: "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another."

"A landowner and his agents have a duty to avoid injuring or unreasonably interfering with a pipe line laid across his property with permission.

"In this connection, Standard Oil Company could, while itself exercising ordinary care, assume that the landowner or his agents would perform this duty and could rely and act on the assumption that the landowner or his agents would not damage or unreasonably interfere with their pipe lines."

The qualification which was omitted, and of which omission plaintiffs complain in their appeal, reads as follows: "[However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one,

or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty.]

''[One is not justified in ignoring obvious danger although it is created by another's misconduct, nor is he ever excused from exercising ordinary care.]''

It is plaintiffs' contention that there is uncontradicted evidence from which the jury could have found Standard Oil's employees knew or should have known that the subsoiler operator was about to damage the pipe line and that Standard Oil's employees were ignoring obvious danger. The testimony quoted by plaintiffs is testimony as to conditions of the soil after the break in the pipe line and does not reveal the condition of the soil over the pipe line before the break.

The only testimony regarding knowledge of Standard Oil before the accident was from William Davis, the linewalker. The record reveals that a linewalker is one employed by the Standard Oil Company to walk the distance from Pinole to Tracy, a distance of 58 miles, each week to observe the condition of the pipe line. The linewalker in this case testified that on October 15, 1954, he saw equipment working in the field here in question and reported it to the Tracy Reservoir. He again passed the Buskovich farm on October 22, 1954, and saw a tractor pulling a piece of equipment he could not identify but which he believed was a land scraper or subsoiler. At the time he made this observation that equipment was about 400 to 500 feet away from the pipe line and moving parallel to it and in an east-west direction. Davis also noticed that the soil was loose up to about three feet of the pipe line but never saw any equipment working in the area of the pipe line.

Plaintiffs cite several cases where the court held that the failure to add the qualification here contended for was prejudicial error. All of these cases are cases involving automobile collisions, and the distinction between them and the case at bar is obvious. In each of the cited cases the question of negligence and contributory negligence was extremely close. But here there is no evidence which would reasonably make Standard Oil foresee that the landowner and his agents would hit the pipe line when they had full knowledge of its presence and location. The easement was a matter of record, and the line had existed for 40 years, having been replaced some 15 years before the accident. Buskovich and previous owners had planted crops on the land and had worked it during all the years of the pipe's existence. It would seem unreasonable

to argue that a farmer working his field 400 to 500 feet from the line in full accordance with his rights is notice that he will violate his duty with respect to the easement. The case of *Vernon* v. *Owl Truck & Construction Co.*, 137 Cal.App.2d 437 [290 P.2d 603], holds that it is not error to refuse the qualification where there is no evidence which would indicate that another would not perform his duty also. In *Richter* v. *Adobe Creek Lodge,* 143 Cal.App.2d 514 [299 P.2d 941], where children pushed a piano on coasters to the edge of a stage, allowing it to fall off and cause injuries to the plaintiff, an invitee, the court states on pages 516, 517: "There was nothing about the piano itself or its mere presence upon the stage that constituted a hazard to invitees. This piano, despite its large ballbearing casters and the smoothness and slope of the stage, was neither a self-propelling nor a 'free-wheeling' instrument; it moved with difficulty. It was foreseeable that patrons might move the piano about upon the stage as might suit their convenient use of the stage. But that was not an operation which of itself would render the premises foreseeably unsafe for invitees. Nor was that the causative factor here.

"It was the handling of the piano in such a manner as to push one corner of it (one of the casters) over the edge and off the stage that caused the instrument to topple over and injure plaintiff. That was not a danger known to the defendant, nor one which under the circumstances of the case his duty of reasonable care charged him with anticipating and guarding against, especially in view of the lack of any similar occurrence during the four or five years this piano had been on this stage." And on page 518: "It is axiomatic that in the absence of conduct to put him on notice to the contrary a person is entitled to assume that others will not act negligently or unlawfully. (*Leo* v. *Dunham,* 41 Cal.2d 712, 715 [264 P.2d 1].) We are satisfied that there was no evidence of any facts in this case which would reasonably put respondent on notice that one spectator would run violently into another so as to put the duty upon it to take steps to guard against such contingency. Such cases as have considered a like question in other jurisdictions support this conclusion." We do not feel that the omission of the qualification from the instruction was error under the facts of this case.

Plaintiffs further contend that the judgment against plaintiffs and in favor of the Standard Oil Company was not supported by sufficient evidence. This contention is without

merit, as there is ample testimony to support the jury's finding.

### DEFENDANT BOND AND RUSHING'S APPEAL

Defendant Bond and Rushing appeals from the judgment against it and in favor of the plaintiffs. It contends that the evidence fails to support the allegation of joint venture between Bond and Rushing and Martin, the operator of the subsoiler, and also contends that it was prejudicial error to give a certain instruction on res ipsa loquitur.

The contention that there is not sufficient evidence to support a finding of a joint venture between Bond and Rushing and Martin cannot be supported unless the testimony of Martin is disregarded.

█ In order to find that a joint venture exists it is necessary that the following elements be present: (1) A community of interest in the object of the undertaking; (2) an equal right to direct and govern the conduct of each other with respect thereto; (3) share in the losses, if any; (4) close and even fiduciary relationship between the parties (*Beck* v. *Cagle*, 46 Cal.App.2d 152, 161 [115 P.2d 613 ]). The appellant Bond and Rushing concedes that there was a community of interest in the undertaking. Both parties expected to make money; however, Bond and Rushing denies that there was an agreement to share losses. █ The lack of such an agreement to share losses does not appear fatal to the existence of a joint venture, however. █ In *Fitzgerald* v. *Provines*, 102 Cal.App.2d 529, 536 [227 P.2d 860], quoting from *Martter* v. *Byers*, 75 Cal.App.2d 375, 383 [171 P.2d 101], the court states: "[I]f the facts sustain the finding that a joint venture relationship was created 'The omission of a provision for the sharing of losses in a joint venture is immaterial because the law supplies that provision. In the absence of agreement, losses by the parties are shared in the same proportion as profits are to be divided.' "

█ Bond and Rushing contends that there is no evidence to sustain the element necessary to a joint venture as to the right to direct and govern the conduct of each other with respect thereto. The testimony of Martin appears to be that the expressions made by Bond and Rushing, relative to his performance of the work, were more in the nature of suggestions than control, and a reading of the entire testimony of Martin would justify a finding that there was sufficient control exercised to find that this element of a joint venture was

here present. The fact that Martin was not told how to run the tractor and that Buskovich told him that he wanted the subsoiling done in both directions would not negate this finding. Joint venturers may delegate responsibility between them for certain portions of the job without destroying the joint venture aspect thereof. ''Where there is shown no express agreement as to the right of the claimed employer to control the mode and manner of doing the work, the existence or nonexistence of the right must be determined by reasonable inferences drawn from the circumstances shown, and it is a question for the jury. . . . It is only where but one inference can reasonably be drawn from the evidence that the question of whether one is an employee or an independent contractor becomes one of law for the court.'' (*Burlingham* v. *Gray*, 22 Cal.2d 87, 100 [137 P.2d 9].)

Bond and Rushing contends that the extent of the fiduciary relationship was that either might collect from Buskovich and distribute to the other his portion. The fact that Bond and Rushing has submitted a claim for the work done to the Buskovich estate, coupled with the testimony of Martin, is sufficient to sustain the jury's finding that a joint venture existed.

The fact that Martin did not contribute equipment is immaterial, since he furnished his skill and services. (28 Cal.Jur.2d 480.) The mere fact that it appears that the testimony of Martin would indicate that there was no control by Bond and Rushing but rather mere suggestions is consistent with a joint venture, but whether Bond and Rushing merely suggested or whether they exercised control was a question for the jury. The facts here do not justify this court in stating as a matter of law that Bond and Rushing did not exercise control jointly with Martin over the entire venture. The fact that Buskovich made some suggestions certainly does not destroy the elements of a joint venture.

Bond and Rushing argues that the giving of the following instruction was erroneous: ''From the happening of the accident involved in this case, as established by the evidence, there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendants. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind

that it is incumbent upon the defendants to rebut the inference, if any, by showing that they did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on their part.''

Bond and Rushing argues that the instrumentality which caused the injury to Mrs. Buck was the oil in the pipe line rather than any act on their part or on the part of their joint venturer, Martin.

The jury in this case was fully instructed and was given a complete charge on the law in the case. It is one thing to dissect an instruction given by a trial court in the atmosphere of an appellate court and quite another to consider the instructions as they are actually given—as a complete charge given by the judge to a jury which has listened to the facts presented in the particular case.

In the case under consideration, there is certainly a proper basis shown by the evidence to require the giving of an instruction on res ipsa loquitur. The plaintiffs here were guilty of no negligence and were performing a completely lawful act when an incident occurred which is of a type which does not ordinarily occur without negligence. At the time the instruction was given the jury had not as yet determined whether or not Standard Oil Company or Bond and Rushing was guilty of any negligence. The instruction was equally applicable to both defendants, and under the evidence here presented might have supported a verdict against either or both of them. However, the jury, acting within its fact-finding province, found that Standard Oil had not been negligent.

''Where the evidence is conflicting or subject to different inferences, it is for the jury, under proper instructions, to determine whether each of the conditions necessary to bring into play the rule of res ipsa loquitur are present.'' (*Baker* v. *B. F. Goodrich Co.*, 115 Cal.App.2d 221, 229 [252 P.2d 24].) In the case before this court there is conflicting evidence which might well be subject to different inferences. The question was properly submitted to the jury. The conditions necessary to invoke the doctrine of res ipsa loquitur appear to here be present. These are stated to be in *Snyder* v. *Hollingbery*, 141 Cal.App.2d 520, 528 [297 P.2d 485] : ''(a) There is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not normally occur unless someone has been negligent. (b) It

must be caused by an agency or instrumentality within the exclusive control of the defendant. (c) It must not have been due to any voluntary action or contribution on the part of the plaintiff.''

Bond and Rushing admits that conditions (a) and (c) are met in this case. They aggressively assert, however, that condition (b) is totally lacking, contending that the instrumentality causing the accident was oil and that Martin was never in control of any oil nor was Bond and Rushing. It would be a needless extension of artificial rules to release Bond and Rushing for the negligence of its joint venturer because an instrumentality under the control of another was released in such manner and by negligent act of their joint venturer as to cause injury to a third person. The instrumentality which here caused the damage was the subsoiler. The fact that the subsoiler caused a break in the pipe line owned by another cannot be used by the operator of the subsoiler or his joint venturer as a defense to their just liability in this matter. Reading the instructions as a whole and considering each in the light of all others, as a jury and an appellate court must do, we find no error in the giving of the instruction complained of.

The judgment appealed from in the Buskovich appeal, Number 17524, is hereby affirmed, as is the judgment in Number 17522 in favor of Standard Oil Company of California, and the judgment and order appealed from by Bond and Rushing in Number 17522 are affirmed.

Peters, P. J., and Bray, J., concurred.

Petitions for a rehearing were denied February 28, 1958, and the petition of defendants and appellants for a hearing by the Supreme Court was denied March 26, 1958. Shenk, J., did not participate therein. Schauer, J., was of the opinion that the petition should be granted.