[Civ. No. 20623.    First Dist., Div. Two.    Mar. 18, 1963.]

DONALD D. STEPHENS et al., Plaintiffs and Appellants,
v. ROBERT HATFIELD et al., Defendants and Re-
spondents.

. James R. McKittrick for Plaintiffs and Appellants.

. Falk & Falk and Robert C. Dunn for Defendants and Re-
spondents.

AGEE, J.—Plaintiffs appeal from a judgment entered
upon an adverse jury verdict in a wrongful death action
arising from a collision between a truck driven by defend-
ant Hatfield and a Volkswagen automobile in which the de-
ceased, Bettie R. Stephens, was riding as a passenger. Plain-
tiffs are the husband and minor children of the deceased.
The driver of the Volkswagen, JoAnne Cooper, was also
killed in the collision. The defendants Ray Summers and Earl

Summers, doing business as North Coast Transport Company, were the owners of the truck and defendant Hatfield was their employee.

The accident happened on February 4, 1959, about 5 p.m., at a point on Highway 101, approximately one mile north of Fortuna, California. The highway is 18 feet wide and is divided by a center line into north-south lanes of 9 feet each. It is straight at the point of collision. The Volkswagen was northbound and the truck was southbound. The day was dry and clear and visibility was good.

The Volkswagen made a left turn into the southbound lane, apparently headed for the place where fruit was being sold from a truck parked on the shoulder, about 30 feet west of the pavement. The left front of the defendants' truck hit the Volkswagen broadside.

It seems to be conceded that the driver of the Volkswagen violated section 22107 of our Vehicle Code, which provides that "[n]o person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided in this chapter in the event any other vehicle may be affected by the movement." The court read this section to the jury as a part of its instructions.

The theory of plaintiffs is that the defendant truck driver was also negligent and that his negligence was one of the proximate causes of the collision. This being so, plaintiffs would be entitled to recover, since the negligence of the Volkswagen driver is not to be imputed to plaintiffs' decedent.

The *sole issue* on this appeal arises from the giving of an instruction (BAJI 138) without qualifying it by giving an instruction proposed by plaintiffs.

The instruction given is as follows: "A person who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has the further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to antici-

pate an accident which can be occasioned only by a violation of law or duty by another.

The qualifying instruction, proposed by plaintiffs but not given by the court, is as follows: "In determining whether the defendant Robert Hatfield was using reasonable care in this case you are instructed that this standard of reasonable care applies although its application may require him to have anticipated the negligent act of Joann [*sic*] Cooper if the circumstances surrounding the events preceding the accident would have indicated to a reasonable man in the position of Robert Hatfield that Joann [*sic*] Cooper was going to do the negligent act. This would none the less · be true although the act of Joann [*sic*] Cooper also constituted a violation of the California Vehicle Code."

It would be proper to give this instruction if there was sufficient evidence of any facts from which a jury could reasonably conclude that the truck driver knew or, in the exercise of reasonable care, should have known that the Volkswagen was going to be driven into the southbound lane and directly into the path of the approaching truck. (*Koenig* v. *Coe* (1958) 163 Cal.App.2d 429 [329 P.2d 721]; *Carlson* v. *Shewalter* (1952) 110 Cal.App.2d 655 [243 P.2d 549].)

If there is no such evidence then there is no necessity to so qualify BAJI 138. (*Vernon* v. *Owl Truck & Construction Co.* (1955) 137 Cal.App.2d 437 [290 P.2d 603]; *Mulligan* v. *West Coast Fast Freight, Inc.* (1957) 151 Cal.App.2d 791 [312 P.2d 59]; *Buck* v. *Standard Oil Co.* (1958) 157 Cal.App.2d 230 [321 P.2d 67].)

Appellants acknowledge this and they therefore set forth in their brief all of the evidence upon which they rely in their claim that the proposed instruction should have been given. A summary of this evidence follows:

*Mrs. Roland* testified: I was driving a station wagon directly behind the Volkswagen; both of us were going about 25-30 miles per hour; I saw the truck coming; the Volkswagen was signaling a left-hand turn; this signal was by means of a blinking light indicator on the left rear fender; this was on for 200 feet before the driver started to turn; there were no cars in front of the truck; I wondered why the Volkswagen was turning; I didn't see the apple truck until I returned later; the Volkswagen made a gradual turn and it seemed like it went "awful slow"; at the time it started to turn it looked to me like the truck put on its brakes and

tried to stop; there were three or four cars behind me; I was a couple of car lengths behind the Volkswagen; there wasn't any vehicle ahead of the Volkswagen; the Volkswagen made a gradual turn, it just gradually eased over; I was about 50 feet beyond the point of impact when it occurred.

*Wills,* California Highway Patrol, testified as follows: I arrived at 5:37 p.m.; it was still daylight; the point of impact was some 6 feet off the paved portion of the southbound lane; no skid marks led up to the point of impact; the maximum speed limit for defendants' truck was 45 miles per hour; the damage to the truck was on its left front; defendant Hatfield made the following statement: "He stated he was southbound on U.S. 101, observed the traffic northbound. The Volkswagen was the second car in line. He couldn't remember the first one. He observed the Volkswagen to go across the center line to its left, and didn't know whether the driver was making a left turn. He kept moving to his right as the Volkswagen kept veering to its left, and that the driver of the Volkswagen saw his truck just before the collision. By that time it was too late for either of them to do anything, and he further stated that it happened so fast I was unable to use horns or brakes, and that the truck hit the car and rolled it over dragging it to where it is now, and that this broke the airlines on the truck and he had to use the emergency brake to stop it."

*Niekrasz* testified as follows: he is a private investigator employed on behalf of plaintiffs; he interviewed defendant Hatfield at his home; Hatfield told him that "he wasn't paying any particular attention to the traffic on the road"; he was going slowly "due to the fact that the fruit stand was in the area, and he wasn't paying particular attention to the traffic"; that his speed was approximately 30-35 miles per hour; that he couldn't recall whether the Volkswagen was signaling or not; he wrote down a statement which Hatfield signed; it contained the following: "I can't narrow it down to feet, the distances, all I know is that it was right there. I generally make it a habit to drive a little slower than usual because of the fruit stand on the side of the road."

*Hatfield* did not appear at the trial. An affidavit was filed, stating that he lived in Oregon. His deposition was therefore read into the record. It states as follows: the day was clear and sunny and visibility was good; there was a car in front of the Volkswagen; I was just watching oncoming traffic; I first noticed the two cars coming to meet me about

a quarter of a mile away; I did not see any turn lights; I am sure they didn't have any on; that is my positive recollection; I was going within a reasonable speed because of the fruit stand and the work on the road along there; there was no such work going on at the time; my speed had nothing to do with the fact that the fruit stand was there; just as I got to the thing it turned sharply right across in front of me; it just turned right square across the highway; I never saw a blinker light at all; the point of impact was on and off the highway; I was partially off the highway but I don't believe the Volkswagen was; my view of the Volkswagen was not obscured by the car in front of it; when they turned there was no way I could miss them; my speed was 30 to 35 miles per hour.

The testimony relied upon by plaintiffs on this appeal is that of the above four witnesses. The crucial point is whether it reasonably can be concluded that, under the circumstances disclosed by such evidence, a reasonable man, placed in Hatfield's position, should have anticipated that the Volkswagen was going to violate section 22107 of the Vehicle Code and then to have had time, by the use of reasonable care, to have prevented the accident.

There is no evidence of an arm signal and the only evidence of a blinker light signal would be a deduction that, because the left *rear* signal was blinking, it would follow that the left *front* signal was also blinking. Even if this were so, when a vehicle is coming down an open highway and another vehicle is indicating an *intention* to make a left turn, it certainly should not cause the driver of the approaching vehicle to anticipate that the other vehicle is not going to allow him to pass by but is actually going to drive in front of him. The signal, under such circumstances, is more for the benefit of the vehicles to the rear of the vehicle intending to turn. It is also to be noted that there was not an intersection anywhere near the scene of the accident. There is no contradiction of Hatfield's testimony that his speed was any greater than approximately 30-35 miles per hour.

It is our opinion that there is not sufficient evidence to support the giving of an instruction which would permit the jury to find that Hatfield lost his right to rely upon the assumption that the Volkswagen driver would obey the law or to find that he should have anticipated that she would violate section 22107 of the Vehicle Code.

Moreover, the jury was instructed as follows: "It is the duty of the driver of any vehicle using a public street or

highway to exercise ordinary care to avoid placing himself or another person in danger. To use like care to avoid an accident from which injury might result, to be vigilant at all times, keeping a lookout for traffic and *other conditions to be reasonably anticipated,* and to keep the vehicle under such control that, to avoid a collision with any person or with any other object, he can stop as quickly as might be required of him by eventualities that would be *anticipated by an ordinarily prudent driver in like position.''* (Italics added.) This would appear to sufficiently cover the qualification requested by appellants.

As stated above, the single point raised by appellants is the failure to give their proposed instruction qualifying BAJI 138. Under the facts of this case, even if it were held that said instruction should have been given, it appears to be a proper situation for the application of section 4½, article VI, of the California Constitution.[1] No reference has been made to any evidence except that set forth in appellants' opening brief but the other evidence overwhelmingly shows that the accident was solely caused by the negligence of the Volkswagen's driver. We refer particularly to eyewitnesses Dunning and Truby.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

---

[1] ''No judgment shall be set aside . . . on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.''