Filed 3/29/24  Mileham v. Walmart CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| BEVERLY MILEHAM, | |
| Plaintiff and Appellant, | G063091 |
| v. | (Super. Ct. No. CIVDS1926986) |
| WALMART, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Donald R. Alvarez and Bryan F. Foster, Judges.  Affirmed.  Request for judicial notice denied.

Gusdorff Law, Janet Gusdorff; Lyfe Law and Soheil Bahari for Plaintiff and Appellant.

Pettit Kohn Ingrassia Lutz & Dolin, Carey Jean Ramin, Andrew Nicholas Kohn; Susman Godfrey, Elizabeth B. Hadaway and Abigail C. Noebels for Defendant and Respondent.

Beverly Mileham sued Walmart, Inc., after she was hit by a car while crossing a crosswalk at a Walmart parking lot. She asserted claims for premises liability and general negligence. The trial court granted summary judgment for Walmart. Although the court concluded there was a triable issue as to whether the crosswalk was dangerous for lacking additional warning about crossing pedestrians, it found that this condition did not cause the accident, as the driver knew he was at a crosswalk but failed to see Mileham for unrelated reasons.

Challenging this ruling, Mileham contends there was a triable issue as to whether the crosswalk's dangerous condition caused her accident. As explained below, we conclude there was no triable issue because Mileham provided no evidence that any particular feature at the crosswalk both rendered it dangerous and caused the accident. As the trial court concluded, additional warning signage would not have prevented the accident because the driver was fully aware of the potential presence of pedestrians at the crosswalk. And Mileham's evidence did not suggest other safety features were needed to render the crosswalk safe. Accordingly, we affirm.

FACTS

I. *The Accident and Mileham's Action*

On December 11, 2017, Mileham was walking from the parking lot of a Walmart store in Apple Valley toward an entrance to the store. As Mileham was crossing a marked crosswalk leading to the entrance, William Halbe, who was driving west through the crosswalk but did not see her, struck her with his car.

Halbe was aware of the crosswalk as he approached it. However, as Mileham was approaching from the right, Halbe was looking to the left for pedestrians coming out of the store. Halbe was completely blind in his right eye, had glaucoma and the beginning of a cataract in his left eye, and was experiencing glare from the sun. Although there was a pedestrian crossing sign at the crosswalk facing eastbound traffic, there was no similar sign facing westbound traffic.

2

In September 2019, Mileham filed this action against Walmart for premises liability and general negligence.  She alleged Walmart had negligently maintained the premises in a dangerous condition.  In her subsequent response to a special interrogatory, she claimed Walmart was negligent by failing to install traffic signs and other safety measures at the crosswalk "to warn the incoming traffic of the possibility of . . . pedestrians crossing the crosswalk."

II. *Walmart's Motion for Summary Judgment*

Following discovery, Walmart moved for summary judgment, arguing Mileham could not establish that the crosswalk was unreasonably dangerous or that the alleged dangerous condition caused her injuries.  In support, Walmart submitted excerpts from its deposition of Halbe.

In his deposition, Halbe noted he frequented the relevant Walmart store at least once a week and had driven through its parking lot well over 100 times.  According to Halbe, as he drove toward the crosswalk on the day of the accident, he saw the crosswalk.  He was also aware it was there regardless of seeing it because he had been to that store so many times.  Halbe knew there could be people leaving the store and coming onto the crosswalk, which is why he looked to the left as he entered the crosswalk.  He also knew there could be people coming onto the crosswalk from the parking lot.  Halbe did not see Mileham because he was looking to the left, the sun blinded him as he approached, and the area of the crosswalk was shaded, so he "went from bright sunlight directly into a completely shaded area."

Mileham opposed Walmart's motion, arguing the crosswalk was dangerous because there was no pedestrian crossing sign or "other traffic control devices[,] such as stop signs or speed bumps."  She claimed there was a triable issue as to whether the crosswalk's dangerous condition caused the accident.  She did not dispute that Halbe knew about the crosswalk because he had been at the store many times before or that he

3

actually saw it as he was approaching. Nor did she dispute that Halbe knew there could be pedestrians on the crosswalk and that he had actually looked for them.

In support of her opposition, Mileham provided excerpts from her pre-litigation examination of Halbe under oath. In this examination, Halbe recounted turning into the parking lot and onto its main lane. According to Halbe, the distance from that point to the site of the accident was about 75 feet. He estimated he was driving 3 to 10 miles per hour before hitting Mileham. Mileham's counsel showed Halbe a picture of the crosswalk superimposed with a pedestrian crossing sign. In response to counsel's questioning, Halbe agreed this sign would have "helped [him] to become more aware that there was a crosswalk up ahead" and would have "caused [him] to be more attentive to pedestrians." When asked if he thought a speedbump would have helped prevent the accident, Halbe said he did because his car "doesn't like" speedbumps, so he would likely have slowed almost to a stop before the crosswalk. Mileham's counsel then asked Halbe about the effect of a hypothetical stoplight at the crosswalk, and Halbe said this would have prevented the accident because Mileham would not have stepped out in front of him. He noted he had never seen a parking lot with such a feature.

Mileham also provided the declaration of a civil engineering expert, Philip L. Rosescu. Rosescu opined that the crosswalk at the site of Mileham's accident was in a dangerous condition at the time of the accident. He noted there was no pedestrian crossing sign for westbound traffic and explained: "Pedestrian yield signage provides advance notice of areas of high pedestrian activity so drivers can prepare to slow down or stop on short notice." He further explained that crosswalks offer a false sense of security to pedestrians, and so "advanced notice signage for drivers is critical in [reducing the] likelihood of [a] vehicle-pedestrian collision." Rosescu added, "Alternatively, [Walmart] could have provided a stop sign . . . to better prevent the likelihood of a vehicle-pedestrian collision." And he stated, "[M]easures such as attention-drawing signage

4

and/or speed bumps would have . . . decreased the likelihood of pedestrians getting struck by a vehicle."

III. *The Trial Court's Ruling*

The trial court granted Walmart's motion for summary judgment. The court concluded there was a triable issue as to whether the crosswalk was unreasonably dangerous "for failure to include additional warnings regarding pedestrians crossing from the parking lot." However, it concluded there was no triable issue as to whether this condition caused the accident, stating, "Additional warning was not relevant to the accident since [Halbe] admitted that he was aware of the location of the crosswalk and the need for caution and was looking out for pedestrians but due to sun in his eyes he was unable to see [Mileham]." Mileham timely appealed.

DISCUSSION

Mileham contends the trial court erred by granting Walmart's motion for summary judgment because there was a triable issue as to whether a breach of Walmart's duty of care caused her accident. She contends that the absence of certain traffic control measures—a pedestrian crossing sign, a stop sign, a speedbump, and stoplights— rendered the crosswalk unreasonably dangerous and contributed to the accident. As explained below, we conclude there was no triable issue because Mileham provided no evidence that the absence of any particular feature both rendered the crosswalk dangerous and caused the accident.

I. *Governing Principles*

A. *Summary Judgment*

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. [Citation.] A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to present

5

evidence creating a triable issue of material fact. [Citation.] A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. [Citation.] [¶] We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. [Citation.]" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.) We review the trial court's ruling, not its reasoning. (*Jackson v. Ryder Truck Rental, Inc.* (1993) 16 Cal.App.4th 1830, 1836.)

B. *Premises Liability*

"A premises liability claim is founded on a theory of negligence. [Citations.]"[1] (*Joshi v. Fitness Internat., LLC* (2022) 80 Cal.App.5th 814, 832, fn. 13.) A plaintiff asserting this claim must therefore establish the same elements applicable to a negligence claim: (1) duty of care, (2) breach of that duty, (3) causation, and (4) damages. (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) Although the owner of a business "is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.)

A plaintiff who establishes breach of this duty must then satisfy the causation element by showing that the defendant's breach "was a substantial factor in bringing about plaintiff's harm." (*Ortega v. Kmart Corp.*, *supra*, 26 Cal.4th at p. 1205.) The plaintiff "must prove more than abstract negligence unconnected to the injury." (*Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 916.) While causation is generally a question of fact to be decided by a jury, where no reasonable dispute exists, summary judgment is appropriate. (*Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 207.)

---

[1] As Mileham does not contend her premises liability and negligence claims require different analysis, we discuss them together.

II. *Analysis*

The trial court did not err by granting Walmart's motion for summary judgment because there was no triable issue as to whether any breach of Walmart's duty of care caused Mileham's accident. No evidence supported a finding that the absence of a particular traffic control measure both rendered the crosswalk dangerous and caused the accident.

First, even assuming the absence of a pedestrian crossing sign for westbound traffic rendered the crosswalk unreasonably dangerous, this feature had nothing to do with Mileham's accident. As Rosescu noted, the purpose of a pedestrian crossing sign is to "provide[] advance notice of areas of high pedestrian activity so drivers can prepare to slow down or stop on short notice." But it is undisputed that Halbe knew he was approaching a crosswalk: he both saw the crosswalk and knew it was there regardless, as he had driven through that parking lot well over 100 times. He also knew that pedestrians traversed the crosswalk and that he should watch for them. Indeed, he looked to the left—away from Mileham's direction—for people coming out of the store. Under these circumstances, an additional warning sign would have changed nothing.[2] (*Buck v. Standard Oil Co.* (1958) 157 Cal.App.2d 230, 236 ["Where one has actual

---

[2] Mileham requests we take judicial notice of documents relating to a jury verdict against Walmart in a Texas case. She contends these documents are relevant to the "foreseeability" analysis, which, in turn, is relevant to whether Halbe's conduct was a "superseding cause" that absolved Walmart of liability. She is mistaken. Superseding cause is a defense that "absolves a tortfeasor, even though his [or her] conduct *was* a substantial contributing factor, when an independent event intervenes in the chain of causation, producing harm of a kind and degree so far beyond the risk the original tortfeasor should have foreseen that the law deems it unfair to hold him [or her] responsible. [Citations.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 573, fn. 9.) This concept does not, as Mileham suggests, determine *whether* the defendant's conduct was a substantial contributing factor. We therefore deny her request for judicial notice.

7

knowledge of the existence of a dangerous condition, the question of warning becomes immaterial and can have no causal connection with the injury sustained"].)

The evidence suggests a combination of factors caused Halbe to fail to see Mileham despite knowing he was at a crosswalk. Among other things, while Mileham was approaching from Halbe's right, he was looking to the left for pedestrians coming out of the store, Halbe was completely blind in his right eye, had glaucoma and the beginning of cataracts in his left eye, and was experiencing glare from the sun. A lack of warning about the potential presence of pedestrians was not among the contributing factors.

Mileham points to Halbe's agreement in his prelitigation examination that a warning sign would have (1) "helped [him] to become aware that there was a crosswalk up ahead" and (2) "caused [him] to be more attentive to pedestrians." These statements did not create a triable issue. Initially, it appears Halbe's responses concerned the general tendency of a pedestrian crossing sign, rather than its estimated effect on him at the time of the accident. Again, it is undisputed he was both generally aware of the crosswalk's location and actually saw it before the accident, so saying that a sign would have helped him become aware of it would be nonsensical if the statement pertained to the accident. Regardless, Halbe's unexplained statements that a sign would have increased his attentiveness are entirely speculative, especially given that he undisputedly knew there could be pedestrians on the crosswalk and actually looked for them. His speculation could not defeat Walmart's motion for summary judgment. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 775 [proof of causation cannot be based on speculation or conjecture].)

As for the other potential traffic control measures Mileham proffers—a speedbump, a stop sign, and stoplights—she provided no evidence that their absence rendered the crosswalk dangerous apart from the absence of a pedestrian crossing sign. After opining that the crosswalk was in a dangerous condition, Rosescu's declaration

discussed the "critical" importance of pedestrian warning signage. Rosescu then added, "*Alternatively*, [Walmart] could have provided a stop sign . . . to better prevent the likelihood of a vehicle-pedestrian collision." (Italics added.) Thus, according to Rosescu, a stop sign was an alternative means to render the crosswalk reasonably safe. He did not suggest, however, that a stop sign was *needed* to make the crosswalk safe. To the contrary, he suggested a warning sign would have been enough.

The same is true for a speedbump. Rosescu stated that "measures such as attention-drawing signage and/or speed bumps would have . . . decreased the likelihood of pedestrians getting struck by a vehicle." Thus, he discussed a speedbump only as a potential alternative or addition to a warning sign. And Rosescu did not even discuss stoplights, let alone suggest they were necessary to make the crosswalk safe. Accordingly, Mileham's evidence showed, at most, that the crosswalk was dangerous because it lacked a pedestrian crossing sign for westbound traffic. Because the record shows as a matter of law that the absence of a warning sign did not contribute to Mileham's injury, the trial court correctly granted summary judgment for Walmart.

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

9